A-475-834<br>
Remand<br>
Court No. 23-00001<br>
POR: 5/1/2020 – 4/30/2021<br>
**Public Document**<br>
E&C/OII: AM

*Officine Tecnosider SRL v. United States*,
**Court No. 23-00001 (CIT May 15, 2023)**
**Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) granting Commerce's request for a voluntary remand, issued as *Officine Tecnosider SRL v. United States*, Court No. 23-00001 (CIT May 15, 2023) (*Remand Order*). This action arises out of the final results in the 2020-2021 administrative review of the antidumping duty (AD) order on certain carbon and alloy steel cut-to-length plate from Italy.[1] Officine Tecnosider S.R.L. (OTS) was a mandatory respondent in the underlying administrative review, and the period of review (POR) is May 1, 2020, through April 30, 2021.

On May 15, 2023, the Court granted Commerce's request for a voluntary remand of the *Final Results* to reconsider whether the application of the quarterly cost methodology for OTS is appropriate, and, if appropriate, revise the weighted-average dumping margin for OTS. After reopening the record for OTS to submit additional information with respect to its reported cost of production (COP), Commerce has determined that our quarterly cost methodology is warranted

---

[1] *See Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021*, 87 FR 75219 (December 8, 2022) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

for OTS. Consequently, we recalculated the estimated weighted-average dumping margin for OTS by relying on OTS' quarterly cost database. As a result, the revised weighted-average dumping margin for OTS is 0.00 percent.

## II. BACKGROUND

Commerce published the *Final Results* on December 8, 2022.[2] As discussed in the *Final Results*, Commerce relied on OTS' annual COP data, the only COP data submitted on the record by OTS, and applied our standard methodology of using annual average costs based on the reported data.[3]

In March 2023, OTS challenged Commerce's decision to apply its standard cost methodology instead of applying the quarterly cost methodology which OTS claimed was warranted based on the information on the record. On May 8, 2023, Commerce sought a voluntary remand to reconsider whether the application of the quarterly cost methodology for OTS is appropriate, and, if appropriate, revise the dumping margin for OTS. On May 15, 2023, the Court granted Commerce's request for a voluntary remand.[4]

On May 18, 2023, we reopened the administrative record to: (1) request that OTS file additional information with respect to its reported COP; and (2) allow other interested parties to submit factual information to rebut, clarify, or correct this information.[5] On May 30, 2023, OTS filed its response to Commerce's request for information.[6] We did not receive any rebuttal comments.

---

[2] *Id.*
[3] *Id.* at Comment 7.
[4] *See Remand Order* at 1-3.
[5] *See* Commerce's Letter, "Remand Redetermination in the 2020-2021 Antidumping Duty Administrative Review of Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy," dated May 18, 2023.
[6] *See* OTS' Letter, "Remand Redetermination in the 2020-2021 Antidumping Duty Administrative Review of Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy," dated May 30, 2023.

**III.     ANALYSIS**

For these final results of redetermination, we recalculated OTS' estimated weighted-average dumping margin for the POR using its quarterly COP database. We revised our calculations from the *Final Results* as discussed below.[7]

Cost of Production Analysis

In accordance with section 773(b)(2)(A)(ii) of the Tariff Act of 1930, as amended (the Act), Commerce requested COP and constructed value information from OTS to determine if there were reasonable grounds to believe or suspect that sales of the foreign like product had been made at prices less than the COP of the product.

1.     Cost Averaging Methodology

Commerce's normal practice is to calculate an annual weighted-average cost for the POR. However, we recognize that possible distortions may result if we use our normal annual average cost method during a time of significant cost changes. In determining whether to deviate from our normal methodology of calculating an annual weighted-average cost, we evaluate the case-specific record evidence. Specifically, to use an alternative cost methodology, we must find that the respondent's data meets two criteria: (1) whether the change in the cost of manufacturing (COM) during the POR was significant; and (2) whether the record evidence indicates that sales made during the shorter cost-averaging periods could be reasonably linked with COM during the same shorter cost-averaging periods.[8]

---

[7] For a full discussion of our methodology, other than our revised COP analysis, *see Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2020-2021*, and accompanying Preliminary Decision Memorandum, unchanged in the *Final Results*.

[8] *See Stainless Steel Sheet and Strip in Coils from Mexico: Final Results of Antidumping Duty Administrative Review*, 75 FR 6627 (February 10, 2010) (*SSSSC from Mexico*), and accompanying IDM at Comment 6; *see also Stainless-Steel Plate in Coils from Belgium: Final Results of Antidumping Duty Administrative Review*, 73 FR 75398 (December 11, 2008) (*SSPC from Belgium*), and accompanying IDM at Comment 4.

As discussed below, we examined OTS' cost data and determined that both of the above criteria were met and that the application of our quarterly cost methodology was appropriate.

i.  Significance of Cost Changes

In prior cases, we established 25 percent as the threshold between the high and low quarterly COM over a 12-month period (37.5 percent for an 18-month POR) for determining that the changes in COM are significant enough to warrant a departure from our standard annual-average cost approach.[9]  In the instant case, record evidence shows that OTS experienced significant cost changes (*i.e.*, changes that exceeded 25 percent) between the high and low quarterly COM for the majority of the five highest sales volume control numbers (CONNUM) in the comparison and U.S. markets during the POR.[10]

ii.  Linkage Between Sales and Cost Information

Consistent with past precedent, because we found the changes in COM to be significant, we evaluated whether there was evidence of a linkage between the COM changes and the sales prices during the POR.[11]  Absent a surcharge or other pricing mechanism, Commerce may alternatively look for evidence of a pattern showing that changes in sales prices reasonably correlate to changes in per-unit COM.[12]  To determine whether a reasonable correlation existed between the sales prices and underlying COM during the POR, we compared weight-averaged U.S. market and comparison market sales prices, by quarter, with the reported quarterly COM for high volume CONNUMs.  Our comparison revealed that sales prices and COM for OTS showed

---

[9] *See SSPC from Belgium* IDM at Comment 4; *see also Certain Cold Rolled Steel Flat Products from the Republic of Korea:  Final Results of Antidumping Duty Administrative Review; 2016-2017*, 84 FR 24083 (May 24, 2019), and accompanying IDM at Comment 6.
[10] *See* Memorandum, "Margin Calculations for Officine Tecnosider S.R.L. Pursuant to Draft Results of Redetermination," dated July 19, 2023 (OTS Draft Remand Calculation Memorandum), at 2.
[11] *See SSSSC from Mexico* IDM at Comment 6; *see also SSPC from Belgium* IDM at Comment 4.
[12] *See SSPC from Belgium* IDM at Comment 4.

4

a reasonable correlation.[13]  After reviewing this information and determining that, changes in sales prices correlated reasonably to changes in per-unit COM, we determine that there is linkage between OTS' changing sales prices and COM during the POR.  Thus, for these final results of redetermination, we determine that a shorter cost-averaging period approach, based on a quarterly-average COM, is appropriate for OTS, because we found significant cost changes in COM, as well as a reasonable linkage between costs and sale prices.

2.  Calculation of COP

In accordance with section 773(b)(3) of the Act, we calculated COP based on the sum of the cost of materials and fabrication for the foreign like product, plus amounts for general and administrative and interest expenses.

We relied on the quarterly COP data submitted by OTS without adjustments for purposes of these final results of redetermination.[14]

3.  Test of Comparison Market Sales Prices

On a product-specific basis, pursuant to section 773(b) of the Act, we compared the adjusted weighted-average COPs to the home market sales prices of the foreign like product to determine whether the sales prices were below the COPs.  For purposes of this comparison, we used COPs exclusive of selling and packing expenses.  The prices were exclusive of any applicable billing adjustments, discounts, rebates, movement charges, actual direct and indirect selling expenses, and packing expenses.

4.  Results of the COP Test

In determining whether to disregard home market sales made at prices below the COP, we examined, in accordance with sections 773(b)(1)(A) and (B) of the Act, whether:  (1) within

---

[13] *See* OTS Draft Remand Calculation Memorandum at 2-3 and Attachment III.
[14] *See* OTS Draft Remand Calculation Memorandum.

an extended period of time, such sales were made in substantial quantities; and (2) such sales were made at prices which permitted the recovery of all costs within a reasonable period of time in the normal course of trade.  In accordance with sections 773(b)(2)(B) and (C) of the Act, where less than 20 percent of a respondent's home market sales of a given product are at prices less than the COP, we do not disregard any of the below-cost sales of that product because we determine that in such instances the below-cost sales were not made within an extended period of time and in "substantial quantities."  Where 20 percent or more of a respondent's sales of a given product are at prices less than the COP, we disregard the below-cost sales when:  (1) the sales were made within an extended period of time in accordance with section 773(b)(2)(B) of the Act; and (2) based on our comparison of prices to the weighted-average COPs for the POR, the sales were at prices which would not permit the recovery of all costs within a reasonable period of time, in accordance with section 773(b)(2)(D) of the Act.

We found that, for certain products, more than 20 percent of OTS' home market sales were at prices less than the COP and, in addition, such sales did not provide for the recovery of costs within a reasonable period of time.[15]  Therefore, we disregarded these sales and used the remaining sales as the basis for determining normal value, in accordance with section 773(b)(1) of the Act.

**IV.    INTERESTED PARTY COMMENTS**

On July 19, 2023, Commerce released the draft results of redetermination to all interested parties and invited parties to comment.[16]  On July 21, 2023, we received comments from OTS.[17]

---

[15] *Id.*
[16] *See* Draft Results of Redetermination Pursuant to Court Remand, *Officine Tecnosider SRL v. United States*, Court No. 23-00001 (CIT May 15, 2023), dated July 19, 2023.
[17] *See* OTS' Letter, "Officine Tecnosider S.R.L.'s Comments on Draft Results of Redetermination," dated July 21, 2023 (OTS' Comments).

On July 26, 2023, we received comments from Nucor Corporation (Nucor).[18] We address the parties' comments below.

*Nucor's Comments*

- Commerce's analysis and determination in the draft results of redetermination to apply the quarterly cost methodology for OTS is flawed because it does not take into account case-specific record evidence regarding OTS' limited U.S. sales. A more case-specific analysis would demonstrate that OTS does not qualify for the alternative quarterly cost methodology.[19]

- Commerce will only deviate from its normal annual weighted-average cost methodology and apply an alternate quarterly cost methodology if a respondent's data meet two conditions: (1) there is a significant change in the COM during the POR; and (2) the sales made during the shorter averaging periods were reasonably linked with the COM during the same shorter averaging periods.[20]

- Commerce determines whether changes in sales prices and COM are "reasonably linked" by examining the record evidence to compare the trends of a respondent's costs on a quarterly basis against the trends of the respondent's home market and U.S. sale prices to determine whether the costs and sales prices moved in the same direction from one quarter to the next.[21]

---

[18] *See* Nucor's Letter, "Comments on Draft Results of Redetermination," dated July 26, 2023 (Nucor's Comments).
[19] *Id.* at 1-2.
[20] *Id.* at 2 (citing *Light-Walled Rectangular Pipe and Tube from Mexico: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 FR 21829 (April 20, 2020), and accompanying IDM at Comment 1).
[21] *Id.* at 2-3 (citing *Certain Welded Carbon Steel Pipe and Tube from Turkey: Notice of Final Results of Antidumping Duty Administrative Review*, 76 FR 76939 (December 9, 2011), and accompanying IDM at Comment 1; and *Circular Welded Non–Alloy Steel Pipe from the Republic of Korea: Final Results of the Antidumping Duty Administrative Review*, 75 FR 34980 (June 21, 2010), and accompanying IDM at Comment 1).

- Commerce typically evaluates whether the data satisfy both the "significant change" and "reasonable linked" conditions by examining the five largest selling CONNUMs in the home market and in the United States.[22] However, Commerce will adjust its consideration to take into account case-specific facts.[23] For example, in *Ferrovanadium from Korea*, Commerce conducted its analysis on the basis of a single CONNUM when only one CONNUM was sold in the U.S. market.[24]

- In the draft results of redetermination, Commerce analyzed the top five largest-selling home market CONNUMs to determine whether changes in sales prices and COM were reasonably linked.[25] However, analysis of OTS' five largest-selling home market CONNUMs has limited value considering the relevance of these home market CONNUMs to the margin calculations.[26] Thus, Commerce's linkage analysis should instead focus on the home market CONNUMs that matched to U.S. sales in the margin calculations.[27]

- Additionally, as Commerce noted in the draft results of redetermination, OTS only made U.S. sales during the third quarter of the POR;[28] therefore, Commerce cannot measure a change in the U.S. sales price from quarter to quarter because a price trend cannot be calculated from a single data point. As such, changes in the U.S. sales price cannot be linked with any cost changes, as required by the second condition for the use of the

---

[22] *Id.* at 3.
[23] *Id.* (citing *Ferrovanadium from the Republic of Korea: Final Determination of Sales at Less Than Fair Value*, 82 FR 14874 (March 23, 2017) (*Ferrovanadium from Korea*), and accompanying IDM at Comment 8).
[24] *Id.* at 3 (citing *Ferrovanadium from Korea*).
[25] *Id.* (citing OTS Draft Remand Calculation Memorandum at 2-3).
[26] *Id.* at 3-4 (citing SAS output file "ots_ar4_final_concord.sas7bdat").
[27] *Id.* at 4.
[28] *Id.* at 5 (citing OTS Draft Remand Calculation Memorandum at 2).

quarterly cost methodology.[29]  Commerce must take into account the lack of correlation analysis for the U.S. market in its analysis.[30]

- The CONNUMs (*i.e.*, those relevant to the margin calculations) that should be used for the quarterly cost analysis do not demonstrate correlation between sales price and costs, and, thus, there is insufficient record evidence that sales made during the shorter averaging periods were reasonably linked with the COMs during the same shorter averaging periods.[31]  Therefore, Commerce should apply its normal, annual weighted-average cost methodology to calculate OTS' margin.

*OTS' Comments*

- Commerce's draft results of redetermination and application of the quarterly cost methodology for OTS for this POR are appropriate and supported by record evidence.[32]

**Commerce's Position:**

For the final results of redetermination, we continue to rely on OTS' quarterly COP data for the margin calculations.  As discussed above, we evaluated the case-specific record data to determine whether to deviate from our normal methodology of calculating an annual weighted-average cost for OTS.  Specifically, we analyzed OTS' cost and sales data to determine:  (1) whether the change in COM during the POR is significant; and (2) whether the record evidence indicates that sales made during the shorter cost-averaging periods could be reasonably linked with COM during the same shorter cost-averaging periods.[33]  In this case, the record evidence shows that OTS experienced significant cost changes (*i.e.*, changes that exceeded 25 percent)

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *See* OTS' Comments at 1-2.
[33] *See* OTS Draft Remand Calculation Memorandum at 2-3.

between the high and low quarterly COM for the majority of the five highest sales volume CONNUMs in the comparison and U.S. markets during the POR.[34]  Next, because we found the changes in COM to be significant, we evaluated whether there is evidence of a linkage between the COM changes and the sales prices during the POR.  We applied our standard analysis of examining the five largest sales volume CONNUMs in the home market and five largest sales volume CONNUMs in the U.S. market to determine whether there was a reasonable correlation between changing costs and sales prices from quarter to quarter.  Our comparison revealed that sales and costs for OTS showed a reasonable correlation between the quarterly COM and sales prices for the same period.[35]

Therefore, based on our analysis, we find that OTS' data met the two criteria required for deviating from our normal methodology of calculating an annual weighted-average and instead using an alternative quarterly cost methodology.  Specifically, we find that:  (1) the change in COM was significant; and (2) there was reasonable linkage between OTS' changing sales prices and COM during the POR.  Thus, we applied the quarterly cost methodology to calculate OTS' direct material costs for purposes of the draft remand margin calculations.

Nucor argues that, for the linkage analysis of OTS' sales prices and COMs, Commerce should deviate from its normal practice of examining the top five selling CONNUMs in each market and instead conduct the linkage analysis based on a selection of specific home market CONNUMs that can only be determined after running the margin calculation program.  With respect to OTS' U.S. CONNUMs, Nucor further argues that Commerce is unable to conduct a trend analysis given that OTS only made U.S. sales during the third quarter of the POR and thus,

---

[34] *Id*. at 2.
[35] *Id*. at 2-3 and Attachment III.  Specifically, we found that the quarterly COMs and quarterly sale prices were moving in the same direction for the majority of the POR.

none of the CONNUMs sold in the U.S. support a finding of linkage between costs and prices.[36] We disagree that such a change to our methodology is appropriate.

Commerce has an established methodology to determine whether a reasonable correlation exists between the sales prices and underlying COM using the respondent's data. Our methodology is a consistent and predictable approach that can be applied across cases, regardless of other adjustments or changes to the calculations that may affect which CONNUMs we examine in our margin analysis. While we recognize that the record data will vary across cases based on the respondent's POR cost and sales experience and there may not be five CONNUMs sold or produced in each market in every quarter in every case, Commerce developed a consistent practice of examining the largest volume CONNUMs for the linkage analysis across all cases. Furthermore, we are reluctant to adopt Nucor's proposal for departing from our practice because it requires conducting the linkage analysis after running the margin calculation. The purpose of our quarterly analysis is to determine whether it is appropriate to use annual average cost data or quarterly cost data. In our view, the proposed approach of conducting the linkage analysis after running the margin calculation is not reasonable because the CONNUMs involved in the sales matches between markets could vary based on specific adjustments and calculations, including for each quarter depending on whether Commerce uses annual average cost data or quarterly cost data.

We further find that Nucor's reliance on *Ferrovanadium from Korea* is misplaced. While Nucor asserts that Commerce deviated from its practice to conduct the analysis in that case on the basis of a single U.S. CONNUM when only one CONNUM was sold in the U.S. market, it fails to note that the respondent in that case only produced three CONNUMs in the POR and the

---

[36] *See* Nucor's Comments at 5.

CONNUM used in the analysis was the only CONNUM sold in the U.S. market and the highest volume CONNUM in the home market.[37] Thus, Commerce still followed its established practice in that case of analyzing the largest sales volume CONNUMs in the pool of CONNUMs to conduct both the cost change and linkage analysis; the pool simply happened to be a pool of one CONNUM in that review.

We also find that, while Commerce may not be able to complete a trend analysis for U.S. prices due to the timing of OTS' sales, this limitation is not dispositive in light of the affirmative evidence of linkage between costs and prices in the home market. Moreover, it is not that there is no correlation regarding the U.S. prices, but rather that the data points we have do not allow us to perform the analysis. Commerce analyzes the data points of the top five CONNUMs in the comparison and U.S. markets, in accordance with our practice, to the extent that the data points are available. Due to the business proprietary nature related to Nucor's additional case-specific arguments for deviating from Commerce's established linkage methodology, a more detailed discussion of this matter can be found in the BPI Memorandum, dated concurrently with these final results of redetermination, which we incorporate by reference.[38]

Accordingly, and consistent with our established practice for determining whether to apply an alternative cost methodology, for these final results of redetermination, we continue to calculate OTS' estimated weighted-average dumping margin using its quarterly COP database.

## V.     FINAL RESULTS OF REDETERMINATION

We recalculated OTS' estimated weighted-average dumping margin according to the analysis described above. As a result, the estimated weighted-average dumping margin for OTS

---

[37] *See Ferrovanadium from Korea* IDM at Comment 8.
[38] *See* Memorandum, "Business Proprietary Information (BPI) Related to the Final Results of Redetermination," dated concurrently with this memorandum (BPI Memorandum).

12

is 0.00 percent.[39]  Because the weighted-average dumping margin for OTS is different from the dumping margin in the *Final Results*, should the Court sustain these final results of redetermination, Commerce intends to publish a notice of court decision not in harmony with the results of administrative review and notice of amended final results and issue instructions to U.S. Customs and Border Protection to liquidate appropriate entries during the POR of subject merchandise from OTS.  Because the cash deposit rate for OTS has not been superseded by a subsequent administrative review of the AD order at this time, we intend to issue an amended cash deposit instruction.

9/11/2023

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance

---

[39] *Id.*