NON-CONFIDENTIAL VERSION

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OFFICINE TECNOSIDER SRL,<br><br>             Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br>             Defendant,<br>    and<br><br>NUCOR CORPORATION.,<br><br>             Defendant-Intervenor. | Before: Hon. Stephen A. Vaden<br><br>Court No. 23-00001<br><br>NON-CONFIDENTIAL VERSION<br><br>Business Proprietary Information Removed from Pages: 4-8 |

**DEFENDANT-INTERVENOR NUCOR CORPORATION'S
COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT
TO COURT REMAND**

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
Jeffery O. Frank, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: October 12, 2023

**TABLE OF CONTENTS**                                                                  Page

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ............................................................................................................. 1

    A. **Commerce Failed to Support Its Reliance on Quarterly Costs in Light of the Record as a Whole** ................................................................................. 3

    B. **Commerce Failed to Provide a Rational Explanation for Its Determination in Light of the Record** ........................................................................................ 5

III. CONCLUSION ......................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alt. Sugar, Ltd. v. United States,*
   744 F.2d 1556 (Fed. Cir. 1984)..................................................................................................2

*Burlington Truck Lines, Inc. v. United States,*
   371 U.S. 156 (1962)....................................................................................................................2

*Coal. of Am. Flange Producers v. United States,*
   448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ..........................................................................2, 6

*Consol. Edison Co. of New York v. N.L.R.B.,*
   305 U.S. 197 (1938)....................................................................................................................1

*CS Wind Vietnam Co. v. United States,*
   832 F.3d 1367 (Fed. Cir. 2016)..............................................................................................2, 6

*Itochu Bldg. Prods., Co. v. United States,*
   163 F. Supp. 3d 1330 (Ct. Int'l Trade 2016) .............................................................................2

*Jindal Poly Films Ltd. of India v. United States,*
   365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019) ..........................................................................2, 6

*Mid Continent Steel & Wire, Inc. v. United States,*
   941 F.3d 530 (Fed. Cir. 2019).....................................................................................................6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983).................................................................................................................1, 2

*SKF USA Inc. v. United States,*
   263 F.3d 1369 (Fed. Cir. 2001)...................................................................................................6

*SKF USA Inc. v. United States,*
   630 F.3d 1365 (Fed. Cir. 2011)...................................................................................................1

*Ta Chen Stainless Steel Pipe, Inc. v. United States,*
   298 F.3d 1330 (Fed. Cir. 2002)..............................................................................................1, 2

*U.S. Steel Corp. v. United States,*
   37 CIT 1799, 953 F. Supp. 2d 1332 (2013)................................................................................1

**Administrative Materials**

*Certain Welded Carbon Steel Pipe and Tube From Turkey*,
    76 Fed. Reg. 76,939 (Dep't Commerce Dec. 9, 2011) ..................................................................3

*Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*,
    75 Fed. Reg. 34,980 (Dep't Commerce June 21, 2010) ............................................................3

*Ferrovanadium from the Republic of Korea*,
    82 Fed. Reg. 14,874 (Dep't Commerce Mar. 23, 2017) ............................................................7

*Light-Walled Rectangular Pipe and Tube from Mexico*,
    85 Fed. Reg. 21,829 (Dep't Commerce Apr. 20, 2020)............................................................3

I.   **INTRODUCTION**

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we respectfully submit the following comments in opposition to the September 12, 2023 remand results issued by the Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Ct. Remand Order in *Officine Tecnosider SRL v. United States*, Ct. No. 17-00001 (Sept. 12, 2023), ECF No. 32 ("Remand Results"). In its remand determination, Commerce modified its approach for calculating the cost of production for mandatory respondent Officine Tecnosider S.R.L ("OTS"), utilizing its quarterly cost methodology. *Id.* For the reasons discussed below, Nucor respectfully requests that this Court find that Commerce's determination is not supported by substantial evidence and is otherwise not in accordance with law and remand the agency's determination for further consideration.

II.   **ARGUMENT**

"To be in accordance with law, {an agency} decision must not be arbitrary and capricious…and must be supported by substantial evidence and reasoned explanations." *U.S. Steel Corp. v. United States*, 37 CIT 1799, 1801-02, 953 F. Supp. 2d 1332, 1336 (2013) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983); *SKF USA Inc. v. United States*, 630 F.3d 1365, 1373-74 (Fed. Cir. 2011)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). A determination as to whether substantial evidence exists must be based on the record as a whole, taking into consideration both supportive evidence "as well as evidence that 'fairly detracts from the

substantiality of the evidence.'" *Ta Chen*, 298 F.3d at 1335 (quoting *Alt. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).

To meet the "arbitrary and capricious" standard, Commerce must have "examine{d} the relevant data and articulate{d} a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1377 (Fed. Cir. 2016) (remanding to Commerce because the agency did not provide "the needed explanation setting forth the interpretations and evidence-based factual findings that establish the required connection from statute to determination."). Commerce is further "obligated to respond to those arguments made by interested parties that bear on issues material to Commerce's determination." *Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1351-52 (Ct. Int'l Trade 2020) (citing *Itochu Bldg. Prods., Co. v. United States*, 163 F. Supp. 3d 1330, 1337 (Ct. Int'l Trade 2016)) (finding that Commerce failed to provide an adequate explanation where it "did not address several issues raised by Coalition that were material to the agency's determination{.}"). Accordingly, to provide an adequate explanation for a determination, Commerce must provide more than conclusory statements. *See Jindal Poly Films Ltd. of India v. United States*, 365 F. Supp. 3d 1379, 1384-85 (Ct. Int'l Trade 2019) (finding that Commerce failed to provide a reasoned explanation where its "entire analysis for denying the two post-sale price adjustments is comprised of conclusory statements that the adjustments did not satisfy" certain criteria).

Here, a review of Commerce's remand determination in conjunction with the record as a whole and the arguments raised by Nucor demonstrate that the agency's remand determination is not supported by substantial evidence and is otherwise not in accordance with law, as Commerce

did not adequately explain its determination in light of record evidence that detracts from its conclusion and failed to provide a meaningful response to the arguments presented and evidence highlighted by Nucor.

### A.  Commerce Failed to Support Its Reliance on Quarterly Costs in Light of the Record as a Whole

Under its normal methodology, Commerce will calculate an annual weighted-average cost covering the 12 months of the period of review ("POR"). *See* Remand Results at 3; Issues and Decision Memorandum accompanying *Light-Walled Rectangular Pipe and Tube from Mexico*, 85 Fed. Reg. 21,829 (Dep't Commerce Apr. 20, 2020) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2017-2018) at 7 ("LWR Mexico Final Results"). Commerce will deviate from the normal methodology only if a respondent's data meet two conditions. First, the data demonstrate that a respondent experienced a significant change in the cost of manufacturing ("COM") during the POR. *See* Remand Results at 3. Second, "the record evidence indicates that sales made during the shorter cost-averaging periods {can} be reasonably linked with {the} COM during the same shorter cost-averaging periods." *Id*. To determine whether changes in sales prices and COM are "reasonably linked," the Department examines the record for evidence that "changes in selling prices reasonably correlate to changes in unit costs." Issues and Decision Memorandum accompanying *Certain Welded Carbon Steel Pipe and Tube From Turkey*, 76 Fed. Reg. 76,939 (Dep't Commerce Dec. 9, 2011) (notice of final results of antidumping duty admin. rev.) at 4. This correlation analysis compares, on a quarterly basis, the trends of a respondent's costs against the trends of a respondent's home market and U.S. market sale prices. *Id*.; Issues and Decision Memorandum accompanying *Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*, 75 Fed. Reg. 34,980 (Dep't Commerce June 21, 2010) (final results of the antidumping duty admin.

rev.) at 12. Only where both conditions are met does the Department apply the alternative quarterly cost methodology.

To undertake this analysis here, Commerce stated that it was examining the five largest-selling CONNUMs in the home market and the five largest-selling CONNUMs in the United States. Remand Results at 4. While this is Commerce's typical approach, the agency's rote application here failed to take into account the specific facts of this record, including information that undermines the reasonableness of the agency's reliance on this approach and ultimate conclusion. *See* Appx83020-83021; Appx3030-3031; Appx83386-83388; Appx3041-3043. To start, Commerce's analysis fails to account for the fact that, [                                                        ] U.S. sales and that [              ] five largest-selling home market CONNUMs [                              ]. *See* Appx83386; Appx3041. Consequently, [              ] five largest-selling home market CONNUMs has any real relevance to the margin calculation, making Commerce's analysis of the five largest-selling home market CONNUMs of limited value. *See id.* Commerce, however, failed to meaningfully discuss this issue or explain how its analysis still supported its conclusion notwithstanding this fact.

Additionally, with respect to U.S. sales, Commerce was unable to conduct a trend analysis because OTS only made U.S. sales in the third quarter of the POR. *See* Appx83020; Appx3030. As a result, there is evidence of a correlation between cost and price for only half of the relevant data (*i.e.*, the five largest-selling home market CONNUMs) and no evidence of a correlation for the other half (*i.e.*, the five largest-selling U.S. market CONNUMs). Although the agency acknowledges this fact, it failed to provide any discussion of how this impacted its analysis given that no correlation between costs and sales prices could be shown for any U.S. sales. *See*

4

Appx83021; Appx3031; Appx83388; Appx3043. Thus, even under Commerce's normal cost analysis practice, the agency has failed to explain how the record supports it conclusion given that there is no evidence of correlation for a significant part of the data considered.

With respect to both of these issues, Commerce took no effort to meaningfully discuss or consider the record before it and how the specific facts of this case support its cost methodology analysis. The specific facts of this case—namely, the [

]—undermine Commerce's analysis and detract from its ultimate conclusion. Indeed, when [

] CONNUMs relevant to the quarterly cost analysis here [                                        ]. Appx83023; Appx3033. Notably, at the outset of its analysis, Commerce acknowledged that it "evaluate{s} the case-specific record evidence" in determining whether to deviate from its normal cost methodology. Remand Results at 3. Yet, here, Commerce ignored the case-specific factors at issue and failed to discuss how these factors affect its consideration of the cost methodology to be used. Accordingly, when considered on the whole, the record does not support Commerce's finding that the quarterly cost methodology was appropriate.

    **B.**    <u>**Commerce Failed to Provide a Rational Explanation for Its Determination in Light of the Record**</u>

Beyond failing to address the specific facts of this record and how these facts detract from its conclusions, Commerce also failed to provide an adequate explanation for its conclusions. In particular, in addressing the concerns raised by Nucor in response to the draft remand determination, Commerce failed to meaningfully engage with these arguments, instead providing

5

only cursory dismissals of these issues. As such, Commerce determination was not supported or in accordance with law. *See Coal. of Am. Flange,* 448 F. Supp. 3d at 1351-52; *Jindal Poly Films* 365 F. Supp. 3d at 1384-85.

    First, with respect to the [      ] the five-largest selling home market CONNUMs, Commerce dismissed the concerns identified by Nucor because the agency "has an established methodology to determine whether a reasonable correlation exists . . . ." Remand Results at 11. While this may be true, the fact that Commerce has a normal approach to certain issues does not excuse it from supporting and providing a reasoned explanation for its determination in light of the facts of a particular case. *See CS Wind,* 832 F.3d at 1377 ("{A}n agency's statement of what it 'normally' does or has done before . . . is not, by itself, an explanation of 'why its methodology comports with the statute.'" (quoting *SKF USA Inc. v. United States,* 263 F.3d 1369, 1383 (Fed. Cir. 2001))); *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 544 (Fed. Cir. 2019) (in explaining why Commerce's reasoning was insufficient, highlighting that a declaration regarding what the agency normally does or has done before is not an adequate explanation) (citing *CS Wind,* 832 F.3d at 1377). As discussed above, [      ] and [      ] five largest-selling home market CONNUMs. *See* Appx83386; Appx3041. In other words, Commerce examined [      ] relevant to the dumping calculation. *See id.* That the agency was following its normal methodology does not explain why it was reasonable to use the quarterly cost methodology based on information for CONNUMs that [

     ].

    Moreover, as Nucor noted, Commerce has deviated from its normal methodology when necessitated by the facts of the specific case. In *Ferrovanadium from Korea*, the Department

conducted its analysis on the basis of a single CONNUM when "only one CONNUM" was sold in the U.S. market. Issues and Decision Memorandum accompanying *Ferrovanadium from the Republic of Korea*, 82 Fed. Reg. 14,874 (Dep't Commerce Mar. 23, 2017) (final deter. of sales at less than fair value) at 24 n.109 and 25 ("Ferrovanadium from Korea Final Results"). Commerce dismissed this case, claiming that "Commerce still followed its established practice in that case of analyzing the largest sales volume CONNUMs in the pool of CONNUMs to conduct both the cost change and linkage analysis; the pool simply happened to be a pool of one CONNUM in that review." Remand Results at 12. But this is incorrect. While only one CONNUM was sold in the U.S. market, more than one CONNUM was sold in the home market. *See* Ferrovanadium from Korea Final Results at 24 n.109 (referring to the CONNUM sold in the United States as the "highest-sales volume CONNUM sold in the home market"). In other words, even though there were additional CONNUMs sold in the home market, the Department did not include these CONNUMs in its analysis and instead limited its analysis to the CONNUMs that matched to U.S. sales. *Id.* Thus, in *Ferrovanadium from Korea*, Commerce did not blindly follow its normal practice and automatically take into consideration the largest selling home market CONNUMs; instead, Commerce considered the specific facts of the case and took a modified approach to address a unique factual situation. This is what Nucor has asked for, and Commerce has failed to do, here. Appx83021-83023; Appx3031-3033.

Commerce also dismissed Nucor's concern because it was based on "conducting a linkage analysis after running the margin calculation." Remand Results at 11. But this misses the point. Nucor questioned how Commerce's analysis supported its determination to rely on quarterly costs in light of the fact that [                                                  ] irrelevant to the dumping margin calculation. Appx83021-83022; Appx3031-3032. Instead of supporting its determination

or explaining how its analysis was supportive, Commerce simply dismissed the issue.[1] Remand Results at 11.

Finally, with respect to the absence of correlation data regarding U.S. sales and costs, Commerce simply states that this issue "is not dispositive." Remand Results at 12. That may be so, but this does not explain why the record supports the application of the quarterly cost method. Commerce's analysis of the linkage between sales and costs considers two datasets: changes to home market sales relative to costs and changes to U.S. sales relative to costs. Commerce provided no explanation as to why the record supports a finding of a correlation between costs and sales price when no evidence of correlation is available with respect one of the two datasets it examines. *See* Remand Results at 12.

In sum, instead of engaging with the record as a whole and explaining why its determination was supported, Commerce summarily dismisses the concerns identified by Nucor under the guise of following its normal methodology. As a result, Commerce did not provide a reasoned, supported decision based on the record as a whole, and, therefore, its conclusion that the quarterly cost methodology approach was appropriate should not be sustained.

---

[1]     Nucor notes that Commerce asserts that "Nucor's analysis is questionable because Nucor ignores the other [   ] {home market} CONNUMs that matched to [     ] of U.S. sales." Appx83397; Appx3062. Here, too, Commerce misses the point. To start, Nucor recognized that [                                                   ] show a correlation between cost and price. Appx83022; Appx3034. However, Nucor highlighted that, notwithstanding this fact, the [                                                ]. *Id.* Further, as discussed elsewhere, there is no evidence of correlation between U.S. sales and price. *See* Appx830223; Appx3033. Thus, Nucor demonstrated that, on the whole the record did not support Commerce's determination. Commerce, in contrast, does not address the information that detracts from its determination. Commerce focuses only on those datapoints that support its determination but fails to explain why its determination is still supported and reasonable notwithstanding the detracting information.

Ct. No. 23-00001 NON-CONFIDENTIAL VERSION

## III. **CONCLUSION**

For the reasons contained herein, Nucor respectfully requests that the Court remand Commerce's determination for further consideration or explanation, as it is not supported by substantial evidence and is not otherwise in accordance with law.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
Jeffrey O. Frank, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated:  October 12, 2023

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that these comments complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Comments on Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2,581 words.

<u>  /s/ *Alan H. Price*  </u>
(Signature of Attorney)

<u>  Alan H. Price  </u>
(Name of Attorney)

<u>Nucor Corporation</u>
(Representative Of)

<u>October 12, 2023</u>
(Date)