# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| OFFICINE TECNOSIDER SRL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Court No. 23-00001 |
| | ) | |
| THE UNITED STATES, | ) | **Public Version** |
| | ) | BPI REMOVED |
| *Defendant,* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NUCOR CORPORATION, | ) | |
| | ) | |
| *Defendant-Intervenor.* | ) | |
| | ) | |

## DEFENDANT'S CORRECTED RESPONSE TO DEFENDANT-INTERVENOR'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION

Defendant, the United States, respectfully responds to comments filed by defendant-intervenor Nucor Corporation (Nucor), ECF Nos. 37-39, concerning the Department of Commerce's remand redetermination filed in accordance with this Court's remand order.  *See* ECF No. 32 (Sept. 12, 2023) (Remand Redetermination).  For the reasons explained below, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment for the United States.

# BACKGROUND

## I. Commerce's Final Results And Voluntary Remand

On December 8, 2022, Commerce published its final results in the 2020-2021 antidumping duty administrative review covering certain carbon and alloy steel cut-to-length plate from Italy. *See Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy*, 87 Fed. Reg. 75,219 (Dec. 8, 2022) (final results of antidumping duty administrative review and determination of no shipments; 2020-2021 (final results), and accompanying Issues and Decision Memorandum (IDM)). In the final results, Commerce applied its standard annual average cost methodology to calculate the cost of production for mandatory respondent Officine Tecnosider Srl (OTS).

In considering this issue during the review, consistent with its normal practice, Commerce issued its section D questionnaire to OTS. The section D questionnaire requested that OTS report monthly inventory movement schedules for the three most significant direct material inputs in the merchandise under consideration. This information would allow Commerce to initially evaluate the extent to which costs for these inputs have changed over the period of review. *See* OTS October 18, 2021 Section D Response at D-6 (Appx81135-Appx81174). If the reported cost changes appear significant in relation to the cost of manufacturing, Commerce generally issues a supplemental questionnaire that requests quarterly cost information for the five largest home and U.S. market control numbers (CONNUMs) [1] to determine the actual changes in the CONNUM-specific quarterly costs as well as potential linkage between costs and prices.

---

[1] "A 'CONNUM' is a contraction of the term 'control number,' and is Commerce jargon for a unique product (defined in terms of a hierarchy of specified physical characteristics

In its response, OTS explained that "{t}he only significant direct material input used in producing the merchandise under consideration is steel slab" and reported its monthly inventory movement schedules for this input. *Id.*

In the preliminary results, Commerce applied its standard methodology using annual average costs based on the data reported by the respondent:

> We examined {} OTS's cost data. Based on our review of the quarterly average prices of the three largest material inputs {}, we determined that our quarterly cost methodology is not warranted {}. Therefore, we applied our standard methodology of using annual average costs based on {} OTS's reported data.

*See Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments*; 2020-2021, 87 Fed. Reg. 34,246 (Dep't of Commerce June 6, 2022), and accompanying PDM; Appx2261-Appx2264; Appx2271-Appx2290.  In the final results, Commerce continued to apply its standard methodology of using annual average costs reported by OTS.  *See* Appx2302-Appx2304; Appx2305-Appx2337.  OTS subsequently filed suit in this Court.  *See* ECF No. 11 (Jan. 25, 2023).

 In its opening brief, OTS challenged Commerce's decision not to apply a quarterly cost methodology in calculating OTS's dumping margin.  *See* OTS Opening Brief, ECF Nos. 24-25 at 18-24.  OTS alleged that Commerce failed to analyze the issue of quarterly costs with respect to OTS's reported data, nor did Commerce disclose its analysis on such data.  *See id.*  OTS asserted that Commerce should have instead applied a quarterly cost methodology based on the information it submitted.  *See id.*

On May 8, 2023, Commerce sought a voluntary remand to reconsider whether the

---

determined in each antidumping proceeding)." *Dongkuk S&C Co. v. United States*, 600 F. Supp. 3d 1331, 1334 n.4 (Ct. Int'l Trade 2022).

application of the quarterly cost methodology for OTS is warranted, and, if appropriate, revise

the dumping margin for OTS.  *See* ECF No. 26.  In preparing its response to OTS's brief,

Commerce was unable to locate an analysis of the quarterly average prices of steel slab, *i.e.*,

OTS's only significant direct material input, that OTS submitted on the administrative record.

*Id*. at 5.  Accordingly, Commerce requested the Court remand the case so that Commerce could

reconsider the information that OTS submitted in response to Commerce's initial section D

questionnaire and, if appropriate, seek additional quarterly cost information from OTS to revise

the dumping calculations consistent with the agency's practice.  *See id*. at 5-6.  On May 15,

2023, the Court granted Commerce's request for a voluntary remand.  *See* ECF No. 29.

## II.    <u>Remand Redetermination</u>

On May 18, 2023, Commerce reopened the administrative record to:  (1) request that

OTS file additional information with respect to its reported cost of production; and (2) allow

other interested parties to submit factual information to rebut, clarify, or correct this information.

*See* Remand Supp. Questionnaire, Appx3000–Appx3002.  On May 30, 2023, OTS filed its

response to Commerce's request for information.  *See* Supp. Resp., Appx3003–Appx3021,

Appx83000–Appx83018.  Based on the reported information, Commerce departed from its

original methodology applied in the final results and recalculated OTS's estimated weighted-

average dumping margin by relying on its quarterly cost database.  *See* Draft Remand

Appx3022–Appx3028; Draft Calc. Memo Appx3029–Appx3035, Appx83019–Appx83383.  On

July 26, 2023, Nucor filed comments regarding the draft remand redetermination.  *See* Nucor's

Comments on Draft, Appx3036–Appx3047, Appx83384–Appx83395.

On September 12, 2023, Commerce filed its remand redetermination, in which it again

used its quarterly cost methodology and calculated a revised dumping margin of 0.00 percent for

OTS. *See* Final Remand Redetermination Appx3048 –Appx3060; Final Calc. Memo Appx3061 –Appx3062, Appx83396 –Appx83397.

<div align="center">

**ARGUMENT**

</div>

### I.      Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Even if it is possible to draw two inconsistent conclusions from the record evidence, this does not mean that Commerce's findings are unsupported by substantial evidence.  *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  Furthermore, "Commerce's methodologies for calculating dumping margin are presumptively correct." *Fla. Citrus Mut. v. United States*, 550 F.3d 1105, 1111 (Fed. Cir. 2008).

### II.     Commerce's Remand Redetermination Is Supported By Substantial Evidence And Otherwise In Accordance With Law

Commerce's determination to rely on OTS's quarterly cost database is in accordance with the remand order, supported by substantial evidence, and otherwise in accordance with law.

In administrative reviews, Commerce requests that respondents provide cost of production and constructed value information to determine if there are reasonable grounds to believe or suspect that sales of the foreign like product were made at prices less than the cost of production of the product.  *See* 19 U.S.C. § 1677b(b)(2)(A)(ii).  Commerce is statutorily required to disregard sales that are made below the cost of production by comparing prices to weighted-average costs incurred.  *See* 19 U.S.C. § 1677b(b)(1).  When considering the appropriate

approach to analyzing cost information, "Commerce often uses cost averaged over the entire period of review, unless there are significant cost variations and those variations are linked to changes in sales prices." *Rebar Trade Action Coalition v. United States*, 503 F. Supp. 3d 1295, 1298 (Ct. Int'l Trade 2021). When those conditions are met, Commerce will deviate from its normal methodology and use quarterly costs rather than period-wide average costs (*i.e.*, annual weighted average costs). *See id*.

Commerce is "afforded considerable discretion in formulating its practices" in calculating costs of production and determining the relevant time periods for such calculations. *See Pastificio Lucio Garofalo, S.p.A. v. United States*, 35 C.I.T. 630, 635 (2011), *aff'd sub nom. Pastificio Garofalo, S.P.A. v. United States*, 469 F. App'x 901 (Fed. Cir. 2012) ("The statute does not dictate the method by which Commerce may calculate costs of production, nor define the {time period over which the calculation is to be made}, and Commerce is afforded considerable discretion in formulating its practices in this regard."). To determine whether the application of its quarterly costs methodology is appropriate, Commerce must find that the respondent's data meets two criteria: (1) the change in the cost of manufacturing during the period of review was significant; and (2) the record evidence indicates that sales made during the shorter cost-averaging periods could be reasonably linked with the costs during the same shorter cost-averaging periods. *See id*.

With respect to the first criterion, Commerce applies a 25 percent threshold between the high and low quarterly costs over a 12-month period to determine whether the changes in costs are significant enough to warrant a departure from Commerce's standard annual average cost approach. Remand Redetermination at 9-10. Here, record evidence demonstrates that OTS experienced significant cost changes (*i.e.*, changes that exceeded 25 percent) between the high

6

and low quarterly costs for the majority of the five largest sales volume CONNUM in the comparison and U.S. markets during the period of review.  *Id.*

With respect to the second criterion, Commerce evaluated whether there was evidence of a linkage between the cost changes and the sales prices during the period of review.  *Id.*  To determine whether a reasonable correlation existed, Commerce applied its standard analysis of examining the five largest sales volume CONNUMs in the home market and five largest sales volume CONNUMs in the U.S. market to determine whether there was a reasonable correlation between changing costs and sales prices from quarter to quarter.  *Id.*  The comparison revealed that sales prices and costs for OTS showed a reasonable correlation between the quarterly costs and sales prices for the same period.  After reviewing this information and determining that changes in sales prices correlated reasonably to changes in per-unit cost of manufacturing, Commerce determined that there is linkage between OTS's changing sales prices and cost of manufacturing during the period of review.  *Id.*

In sum, Commerce determined that OTS's data met the two criteria required for deviating from its normal methodology of calculating an annual weighted average. Specifically, Commerce determined that:  (1) the change in the cost of manufacturing over the period of review was significant (*i.e.*, greater than 25% between the highest and lowest quarters analyzed); and (2) there was reasonable linkage between OTS's changing sales prices and costs during the period of review.  Therefore, for the remand redetermination, Commerce appropriately determined that a shorter cost-averaging period approach, based on a quarterly-average cost of manufacturing, was appropriate for OTS, and recalculated OTS's dumping margin accordingly. That decision is in accordance with law and supported by substantial evidence, and should therefore be sustained.

**III.    Nucor's Arguments Are Meritless**

The Court will sustain Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from them. *See Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001). Nucor argues that in performing its linkage analysis with respect to OTS's quarterly cost data, "Commerce did not adequately explain its determination in light of record evidence {} and failed to provide a meaningful response to the arguments presented and evidence highlighted by Nucor." *See* ECF Nos. 38-39 (Nucor Remand Br.) at 2-3.  However, Nucor is incorrect. Commerce's determination to rely on quarterly costs in calculating OTS's dumping margin is well-reasoned, consistent with its established practice, and supported by record evidence.

As an initial matter, Nucor does not dispute substantial evidence supports Commerce's conclusion that OTS experienced significant cost changes between the high and low quarterly costs for the majority of the five largest sales volume CONNUMs for each market.  Remand Redetermination at 9-10; *see generally* Nucor Remand Br.  In the remand redetermination, Commerce explained that the changes in OTS's cost data, over the 12-month period, were significant (*i.e.*, exceeding 25 percent) and thus the first criterion of Commerce's quarterly cost analysis was satisfied.  Remand Redetermination at 9-10.

Regarding the second criterion, in the remand redetermination, Commerce explained that its linkage analysis was consistent with its well-established practice of analyzing the top five largest sales volume CONNUMs in the comparison and U.S. markets – to the extent that data points are available – to determine whether a reasonable link exists between a respondent's quarterly costs and sales data during the period of review.  *See* Remand Redetermination at 12; *see also Pastificio Lucio Garofalo, S.p.A.*, 35 C.I.T. at 635 ("Commerce is afforded considerable

discretion in formulating its practices in {calculating cost of production.}"); *Globe Metallurgical, Inc. v. United States*, 28 C.I.T. 1608 (2004) ("A court may measure Commerce's reasonableness by determining whether Commerce's actions are consistent with a past practice or stated policy, or if, in failing to do so, Commerce provides a reasonable explanation."). Although Nucor argues that Commerce's "rote application" of its practice failed to account for the unique facts and arguments on the record, *see* Nucor Remand Br. at 4, Nucor does not demonstrate that Commerce's methodology was unreasonable. *See also AG der Dillinger Huttenwerke v. United States*, 648 F. Supp. 3d 1321 (Ct. Int'l Trade 2023) ("producer failed to show that its proposed alternative methodologies were the only reasonable path forward on the record."). Because "Commerce's methodologies for calculating dumping margins are presumptively correct," *Fla. Citrus Mut.*, 550 F.3d at 1111, in the absence of any demonstration that Commerce's methodology is unreasonable or unlawful, the Court must sustain Commerce's application of its methodology.

     To evaluate whether there was evidence of linkage between the cost changes and the sales prices during the period of review, OTS submitted sales and cost information for the five largest sales volume CONNUMs in the comparison and U.S. markets so that Commerce could determine whether there was a reasonable correlation between changing costs and sales prices from quarter to quarter. Draft Calc. Memo at 2. Regarding U.S. sales, OTS's period of review sales consisted of only five CONNUMS that were all made in the third quarter of the period of review. *Id*. Because all of the data came from the same quarter, it could not be compared to other quarters; thus, Commerce could not perform the linkage analysis for the U.S. sales CONNUMs. *Id*. at 2-3. Therefore, Commerce, in accordance with its standard procedure, compared OTS's average home market sales prices, by quarter, with the reported quarterly costs.

*Id.* The comparison revealed that sales and costs for OTS showed a reasonable correlation between the quarterly costs and sales prices for the same period. *Id.* Specifically, for the majority of the time, quarterly costs and quarterly sales prices were moving in the same direction throughout the period of review. *Id.*; *see also* Draft Calc. Memo Attachment III. After reviewing this information and determining that changes in sales prices correlate reasonably to changes in unit cost, Commerce determined that there was linkage between OTS's changing sales prices and costs during the period of review. *See* Draft Calc. Memo.

In challenging Commerce's linkage analysis, Nucor first argues that Commerce should deviate from its standard practice of examining the top five selling CONNUMs in each market to determine whether a reasonable correlation exists between the sales price and the underlying costs. Nucor Remand Br. at 4. According to Nucor, in applying its standard methodology, Commerce failed to address or consider record evidence – namely whether the following assertion undermines Commerce's linkage analysis:

> [
>                                              ] U.S. sales and that [
>         ] five largest-selling home market CONNUMs [
>                  ]. {} Consequently, [                  ] five largest-selling
> home market CONNUMs has any real relevance to the margin
> calculation, making Commerce's analysis of the five largest-selling
> home market CONNUMs of limited value.

Nucor Remand Br. at 4. However, in its remand redetermination, Commerce explained that it has a well-established methodology in determining whether a reasonable correlation exists between the sales prices and underlying costs based on the respondent's data. Remand Redetermination at 11. This methodology provides for a "consistent and predictable approach that can be applied across cases, regardless of other adjustments or changes to the calculations that may affect which CONNUMs" Commerce examines in its margin analysis, which is

performed after all information is collected and is constantly changing based on interested party comments, verifications and arguments in the briefs that are received throughout the proceeding. *Id*.

When further elaborating why it declined to depart from its standard practice, Commerce explained that Nucor's alternative approach would require Commerce to conduct the linkage analysis only after running the margin calculation program. *Id*. However, the very purpose of Commerce's quarterly cost analysis is to determine whether it is appropriate to use annual average cost data or quarterly cost data for the margin calculation, not after the fact. *Id*. Conducting the linkage analysis after running the margin program is not reasonable, because the CONNUMs involved in the sales matches between markets could vary based on specific adjustments and calculations, depending on whether Commerce uses annual average cost data or quarterly cost data. *Id*.

With respect to U.S. sales, Nucor argues that Commerce was unable to conduct a trend analysis given that OTS only made U.S. sales during the third quarter of the period of review. *See* Nucor Remand Br. at 4 ("there is evidence of a correlation between cost and price for {} the five largest-selling home market CONNUMs) and no evidence of a correlation for the {} the five largest-selling U.S. market CONNUMs."). However, Commerce explained that while it may not have been able to complete a trend analysis for U.S. prices due to the timing of OTS's sales, this limitation was not dispositive in light of the affirmative evidence of linkage between costs and prices in the home market. Remand Redetermination at 12; *see also Home Meridian Int'l, Inc. v. United States*, 772 F.3d 1289, 1296 (Fed. Cir. 2014) ("The data on which Commerce relies to value inputs must be the 'best available information,' but there is no requirement that the data be perfect."). Moreover, Nucor is incorrect when it asserts that Commerce found no correlation in

the U.S. prices; rather, Commerce concluded that there was no way to determine whether a correlation existed given the limitations of the record data. Remand Redetermination at 12.

Next, Nucor argues that "Commerce provided no explanation as to why the record supports a finding of a correlation between costs and sales price." Nucor Remand Br. at 5. In fact, Commerce cited its standard practice as well as record evidence demonstrating linkage. *See* Remand Redetermination at 10-12; Final Calc. Memo at 2. In accordance with its practice, Commerce analyzed the data points of the top five CONNUMs in the comparison and U.S. markets, to the extent that such data points were available. *Id*. In accordance with that practice, based on the information available, Commerce determined that a reasonable correlation existed between the sales prices and underlying costs during the period of review.

Nucor argues that Commerce's analysis should have focused only on U.S. CONNUMs and home market CONNUMs that matched to U.S. CONNUMs, and that such an analysis would have demonstrated that "[                    ] CONNUMs relevant to the quarterly cost analysis here [                                                                ]." *See* Nucor Remand Br. at 5. However, Commerce explained that Nucor's methodology relied on information only known after running the margin calculation, which, as we explained above, is inappropriate at this stage of Commerce's analysis.

Moreover, Commerce acknowledged that the record data could vary across cases based on the respondent's period of review cost and sales experience and there may not be five CONNUMs sold or produced in each market in every quarter in every case. However, this reality does not detract from the fact that the record evidence demonstrated a reasonable correlation between the quarterly costs and sales prices for the same period, which is sufficient to support Commerce's analysis and determinations. *See* Final Calc. Memo at 2-3 and Attachment

III ("Specifically, {Commerce} found that the quarterly COMs and quarterly sales prices were moving in the same direction for the majority of the POR.").  Ultimately, beyond its disagreement with Commerce's application of its standard methodology, Nucor does not cite any evidence detracting from Commerce's analysis and conclusions in the remand redetermination and fails to show that Commerce's actions were not in accordance with the remand order, were unsupported by substantial evidence, or were otherwise not in accordance with law.

Furthermore, Commerce addressed Nucor's hypothetical alternative comparisons and stated in its BPI memorandum that:

> {E}ven if, arguendo, we considered Nucor's arguments to examine its suggested alternative CONNUMs, we still would find that Nucor's analysis is questionable because Nucor ignores the other [      ] HM CONNUMs that matched to [            ] of U.S. sales. A review of these CONNUMs shows that: (1) [          ] they account for [     ] percent of all sales matches; and (2) [            ] supports a finding of linkage. Specifically, for [                          ], there is linkage for [      ] quarters, and for [      ], there is linkage for [          ] quarters.

*Id*. In response, Nucor claims that Commerce "misses the point," stating that "the [

]." *See* Nucor Remand Br. at 7-8, n.1.  However, the fact remains that [      ] of the home market CONNUMs in the margin calculations matched to [            ] of U.S. sales.  *See* Final Calc. Memo at 2-3 and Attachment III.  Moreover, Nucor continues to disregard Commerce's reasoning for not deviating from its established practices by conducting a linkage analysis after running the margin calculation.  *See* Remand Redetermination at 11-12.  As explained above, CONNUMs involved in the sales matches between markets could vary based on specific adjustments and calculations, depending on whether Commerce uses annual average cost data or quarterly cost data.  *Id*.

Next, Commerce also correctly explained that Nucor's reliance on *Ferrovanadium from Korea* was misplaced.  Remand Redetermination at 11-12.  Nucor states that *Ferrovanadium from Korea* demonstrated that Commerce "did not blindly follow its normal practice and automatically take into consideration the largest selling home market CONNUMs . . . and instead limited its analysis to the CONNUMs that matched to U.S. sales."  *See* Nucor Remand Br. at 6-7.  However, nowhere in *Ferrovanadium from Korea* did Commerce state that it valued limiting its analysis to the CONNUMs that matched U.S. sales over its consideration of the largest selling home market CONNUMs.  In that case, Commerce continued to follow its established practice of analyzing the largest sales volume CONNUMs in the pool of CONNUMs to conduct both the cost change and linkage analysis.  *See Ferrovanadium from the Republic of Korea*, 82 Fed. Reg. 14,874 (Dep't Commerce Mar. 23, 2017) (final deter. of sales at less than fair value), and accompanying IDM.  A respondent's sales and cost data need only be reasonably correlated for there to be linkage.  *Id.*  ("{W}e believe that requiring too strict a standard for linkage would unreasonably preclude this remedy for products where there is no pricing mechanism in place and it may be very difficult to precisely link production costs to specific sales.").  After reviewing quarterly cost information and determining that changes in sales prices reasonably correlate to changes in unit costs, Commerce determined that there was a reasonable link between OTS's changing sales prices and costs during the period of review.

In sum, substantial evidence supports Commerce's conclusion that OTS's sales made during the shorter cost-averaging periods could be reasonably linked with the underlying costs during the same shorter cost-averaging periods.  Therefore, in accordance with its established practice, Commerce reasonably determined that a shorter cost-averaging period approach, based on a quarterly-average costs, is appropriate for OTS, because Commerce found significant cost

changes in the cost of manufacturing, as well as a reasonable linkage between OTS's costs and

sales prices. Commerce's remand determination was therefore in accordance with the remand

order, supported by substantial evidence, and otherwise in accordance with law.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand

redetermination and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Augustus Golden
AUGUSTUS J. GOLDEN
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 507-6089
Email: augustus.j.golden@usdoj.gov

OF COUNSEL:
ASHLANDE GELIN
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

March 25, 2024

Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that these comments comply with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which these comments were prepared, the confidential version of these comments contain a total of 4,064 words.

/s/ Augustus Golden

March 25, 2024

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

|  |  |  |
|---|---|---|
| OFFICINE TECNOSIDER SRL, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Court No. 23-00001 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| *Defendant*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NUCOR CORPORATION, | ) | |
| | ) | |
| *Defendant-Intervenor*. | ) | |

**ORDER**

Upon consideration of defendant-intervenor's comments in opposition to the remand redetermination, defendant's responsive comments, and all other pertinent papers, it is hereby

ORDERED that the remand determination is sustained; and it is further

ORDERED that judgment shall issue for the United States.

Dated: _____          _____
     New York, New York                        JUDGE

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| OFFICINE TECNOSIDER SRL, | ) |
| *Plaintiff,* | ) |
| v. | ) Court No. 23-00001 |
| THE UNITED STATES, | ) **Public Version** |
| *Defendant,* | ) BPI REMOVED |
| and | ) |
| NUCOR CORPORATION, | ) |
| *Defendant-Intervenor.* | ) |

## DEFENDANT'S CORRECTED RESPONSE TO DEFENDANT-INTERVENOR'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION
### LIST OF CORRECTIONS

| Correction | Page Number |
|---|---|
| Added "CORRECTED" | 1 |
| Updated underlining on document title | 1 |
| Added "Appx81135-Appx81174" | 2 |
| Deleted "C.R. 151" | 2 |
| Added "Appx3000-Appx3002" | 4 |
| Deleted "P.R.R. 1" | 4 |
| Added "Appx3003-Appx3021, Appx83000-Appx83018" | 4 |
| Deleted "P.R.R. 2, C.R.R. 1-3" | 4 |
| Added "Appx3022-Appx3028" | 4 |
| Deleted "P.R.R. 3" | 4 |
| Added "Appx3029-Appx3035, Appx83019-83383" | 4 |
| Deleted "P.R.R. 4, C.R.R. 5-6" | 4 |
| Added "Appx3036-Appx3047, Appx83384-83395" | 4 |
| Deleted "P.R.R. 5, C.R.R. 12" | 4 |

| Added "Appx3048-Appx3060" | 5 |
|---|---|
| Deleted "P.R.R. 7" | 5 |
| Added "Appx3061-Appx3062" | 5 |
| Deleted "P.R.R. 8" | 5 |
| Added "Appx83396-83397" | 5 |
| Deleted "C.R.R. 13" | 5 |
| Updated date of document | 15 |
| Updated word count | 16 |
| Updated date of document | 16 |

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

_____

| | |
|---|---|
| OFFICINE TECNOSIDER SRL, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Court No. 23-00001 |
| | ) |
| THE UNITED STATES, | ) **Public Version** |
| | ) BPI REMOVED |
| *Defendant,* | ) |
| | ) |
| and | ) |
| | ) |
| NUCOR CORPORATION, | ) |
| | ) |
| *Defendant-Intervenor.* | ) |

_____

## DEFENDANT'S <span style="color:red">CORRECTED</span> RESPONSE TO DEFENDANT-INTERVENOR'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION

Defendant, the United States, respectfully responds to comments filed by defendant-intervenor Nucor Corporation (Nucor), ECF Nos. 37-39, concerning the Department of Commerce's remand redetermination filed in accordance with this Court's remand order.  *See* ECF No. 32 (Sept. 12, 2023) (Remand Redetermination).  For the reasons explained below, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment for the United States.

## BACKGROUND

### I.    Commerce's Final Results And Voluntary Remand

On December 8, 2022, Commerce published its final results in the 2020-2021 antidumping duty administrative review covering certain carbon and alloy steel cut-to-length plate from Italy. *See Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy*, 87 Fed. Reg. 75,219 (Dec. 8, 2022) (final results of antidumping duty administrative review and determination of no shipments; 2020-2021 (final results), and accompanying Issues and Decision Memorandum (IDM)). In the final results, Commerce applied its standard annual average cost methodology to calculate the cost of production for mandatory respondent Officine Tecnosider Srl (OTS).

In considering this issue during the review, consistent with its normal practice, Commerce issued its section D questionnaire to OTS. The section D questionnaire requested that OTS report monthly inventory movement schedules for the three most significant direct material inputs in the merchandise under consideration. This information would allow Commerce to initially evaluate the extent to which costs for these inputs have changed over the period of review. *See* OTS October 18, 2021 Section D Response at D-6 (Appx81135-Appx81174~~C.R. 151~~). If the reported cost changes appear significant in relation to the cost of manufacturing, Commerce generally issues a supplemental questionnaire that requests quarterly cost information for the five largest home and U.S. market control numbers (CONNUMs)[1] to determine the actual changes in the CONNUM-specific quarterly costs as well as potential linkage between costs and prices.

---

[1]  "A 'CONNUM' is a contraction of the term 'control number,' and is Commerce jargon for a unique product (defined in terms of a hierarchy of specified physical characteristics

In its response, OTS explained that "{t}he only significant direct material input used in producing the merchandise under consideration is steel slab" and reported its monthly inventory movement schedules for this input. *Id*.

In the preliminary results, Commerce applied its standard methodology using annual average costs based on the data reported by the respondent:

> We examined {} OTS's cost data. Based on our review of the quarterly average prices of the three largest material inputs {}, we determined that our quarterly cost methodology is not warranted {}. Therefore, we applied our standard methodology of using annual average costs based on {} OTS's reported data.

*See Certain Carbon and Alloy Steel Cut-To-Length Plate from Italy: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments*; 2020-2021, 87 Fed. Reg. 34,246 (Dep't of Commerce June 6, 2022), and accompanying PDM; Appx2261-Appx2264; Appx2271-Appx2290. In the final results, Commerce continued to apply its standard methodology of using annual average costs reported by OTS. *See* Appx2302-Appx2304; Appx2305-Appx2337. OTS subsequently filed suit in this Court. *See* ECF No. 11 (Jan. 25, 2023).

In its opening brief, OTS challenged Commerce's decision not to apply a quarterly cost methodology in calculating OTS's dumping margin. *See* OTS Opening Brief, ECF Nos. 24-25 at 18-24. OTS alleged that Commerce failed to analyze the issue of quarterly costs with respect to OTS's reported data, nor did Commerce disclose its analysis on such data. *See id*. OTS asserted that Commerce should have instead applied a quarterly cost methodology based on the information it submitted. *See id*.

On May 8, 2023, Commerce sought a voluntary remand to reconsider whether the

---

determined in each antidumping proceeding)." *Dongkuk S&C Co. v. United States*, 600 F. Supp. 3d 1331, 1334 n.4 (Ct. Int'l Trade 2022).

application of the quarterly cost methodology for OTS is warranted, and, if appropriate, revise the dumping margin for OTS.  *See* ECF No. 26.  In preparing its response to OTS's brief, Commerce was unable to locate an analysis of the quarterly average prices of steel slab, *i.e.*, OTS's only significant direct material input, that OTS submitted on the administrative record. *Id*. at 5.  Accordingly, Commerce requested the Court remand the case so that Commerce could reconsider the information that OTS submitted in response to Commerce's initial section D questionnaire and, if appropriate, seek additional quarterly cost information from OTS to revise the dumping calculations consistent with the agency's practice.  *See id*. at 5-6.  On May 15, 2023, the Court granted Commerce's request for a voluntary remand.  *See* ECF No. 29.

## II.     **Remand Redetermination**

On May 18, 2023, Commerce reopened the administrative record to:  (1) request that OTS file additional information with respect to its reported cost of production; and (2) allow other interested parties to submit factual information to rebut, clarify, or correct this information. *See* Remand Supp. Questionnaire, Appx3000–Appx3002P.R.R. 1.  On May 30, 2023, OTS filed its response to Commerce's request for information.  *See* Supp. Resp., Appx3003–Appx3021, Appx83000–Appx83018P.R.R. 2, C.R.R. 1-3.  Based on the reported information, Commerce departed from its original methodology applied in the final results and recalculated OTS's estimated weighted-average dumping margin by relying on its quarterly cost database.  *See* Draft Remand Appx3022–Appx3028P.R.R. 3; Draft Calc. Memo Appx3029–Appx3035, Appx83019–Appx83383P.R.R.4, C.R.R. 5-6.  On July 26, 2023, Nucor filed comments regarding the draft remand redetermination.  *See* Nucor's Comments on Draft, Appx3036–Appx3047, Appx83384–Appx83395P.R.R. 5, C.R.R. 12.

On September 12, 2023, Commerce filed its remand redetermination, in which it again

used its quarterly cost methodology and calculated a revised dumping margin of 0.00 percent for

OTS. *See* Final Remand Redetermination Appx3048 –Appx3060P.R.R. 7; Final Calc. Memo

Appx3061 –Appx3062P.R.R. 8, Appx83396 –Appx83397C.R.R. 13.

## ARGUMENT

### I.    Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in

accordance with the remand order, are supported by substantial evidence, and are otherwise in

accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct.

Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Even if it is possible to draw two

inconsistent conclusions from the record evidence, this does not mean that Commerce's findings

are unsupported by substantial evidence. *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620

(1966).  Furthermore, "Commerce's methodologies for calculating dumping margin are

presumptively correct." *Fla. Citrus Mut. v. United States*, 550 F.3d 1105, 1111 (Fed. Cir. 2008).

### II.   Commerce's Remand Redetermination Is Supported By Substantial Evidence And Otherwise In Accordance With Law

Commerce's determination to rely on OTS's quarterly cost database is in accordance with

the remand order, supported by substantial evidence, and otherwise in accordance with law.

In administrative reviews, Commerce requests that respondents provide cost of

production and constructed value information to determine if there are reasonable grounds to

believe or suspect that sales of the foreign like product were made at prices less than the cost of

production of the product. *See* 19 U.S.C. § 1677b(b)(2)(A)(ii).  Commerce is statutorily required

to disregard sales that are made below the cost of production by comparing prices to weighted-

5

average costs incurred. *See* 19 U.S.C. § 1677b(b)(1). When considering the appropriate approach to analyzing cost information, "Commerce often uses cost averaged over the entire period of review, unless there are significant cost variations and those variations are linked to changes in sales prices." *Rebar Trade Action Coalition v. United States*, 503 F. Supp. 3d 1295, 1298 (Ct. Int'l Trade 2021). When those conditions are met, Commerce will deviate from its normal methodology and use quarterly costs rather than period-wide average costs (*i.e.*, annual weighted average costs). *See id.*

Commerce is "afforded considerable discretion in formulating its practices" in calculating costs of production and determining the relevant time periods for such calculations. *See Pastificio Lucio Garofalo, S.p.A. v. United States*, 35 C.I.T. 630, 635 (2011), *aff'd sub nom. Pastificio Garofalo, S.P.A. v. United States*, 469 F. App'x 901 (Fed. Cir. 2012) ("The statute does not dictate the method by which Commerce may calculate costs of production, nor define the {time period over which the calculation is to be made}, and Commerce is afforded considerable discretion in formulating its practices in this regard."). To determine whether the application of its quarterly costs methodology is appropriate, Commerce must find that the respondent's data meets two criteria: (1) the change in the cost of manufacturing during the period of review was significant; and (2) the record evidence indicates that sales made during the shorter cost-averaging periods could be reasonably linked with the costs during the same shorter cost-averaging periods. *See id.*

With respect to the first criterion, Commerce applies a 25 percent threshold between the high and low quarterly costs over a 12-month period to determine whether the changes in costs are significant enough to warrant a departure from Commerce's standard annual average cost approach. Remand Redetermination at 9-10. Here, record evidence demonstrates that OTS

6

experienced significant cost changes (*i.e.*, changes that exceeded 25 percent) between the high and low quarterly costs for the majority of the five largest sales volume CONNUM in the comparison and U.S. markets during the period of review. *Id.*

With respect to the second criterion, Commerce evaluated whether there was evidence of a linkage between the cost changes and the sales prices during the period of review. *Id.* To determine whether a reasonable correlation existed, Commerce applied its standard analysis of examining the five largest sales volume CONNUMs in the home market and five largest sales volume CONNUMs in the U.S. market to determine whether there was a reasonable correlation between changing costs and sales prices from quarter to quarter. *Id.* The comparison revealed that sales prices and costs for OTS showed a reasonable correlation between the quarterly costs and sales prices for the same period. After reviewing this information and determining that changes in sales prices correlated reasonably to changes in per-unit cost of manufacturing, Commerce determined that there is linkage between OTS's changing sales prices and cost of manufacturing during the period of review. *Id.*

In sum, Commerce determined that OTS's data met the two criteria required for deviating from its normal methodology of calculating an annual weighted average. Specifically, Commerce determined that: (1) the change in the cost of manufacturing over the period of review was significant (*i.e.*, greater than 25% between the highest and lowest quarters analyzed); and (2) there was reasonable linkage between OTS's changing sales prices and costs during the period of review. Therefore, for the remand redetermination, Commerce appropriately determined that a shorter cost-averaging period approach, based on a quarterly-average cost of manufacturing, was appropriate for OTS, and recalculated OTS's dumping margin accordingly.

That decision is in accordance with law and supported by substantial evidence, and should therefore be sustained.

### III.    Nucor's Arguments Are Meritless

The Court will sustain Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from them. *See Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001). Nucor argues that in performing its linkage analysis with respect to OTS's quarterly cost data, "Commerce did not adequately explain its determination in light of record evidence { } and failed to provide a meaningful response to the arguments presented and evidence highlighted by Nucor." *See* ECF Nos. 38-39 (Nucor Remand Br.) at 2-3.  However, Nucor is incorrect. Commerce's determination to rely on quarterly costs in calculating OTS's dumping margin is well-reasoned, consistent with its established practice, and supported by record evidence.

As an initial matter, Nucor does not dispute substantial evidence supports Commerce's conclusion that OTS experienced significant cost changes between the high and low quarterly costs for the majority of the five largest sales volume CONNUMs for each market.  Remand Redetermination at 9-10; *see generally* Nucor Remand Br.  In the remand redetermination, Commerce explained that the changes in OTS's cost data, over the 12-month period, were significant (*i.e.*, exceeding 25 percent) and thus the first criterion of Commerce's quarterly cost analysis was satisfied.  Remand Redetermination at 9-10.

Regarding the second criterion, in the remand redetermination, Commerce explained that its linkage analysis was consistent with its well-established practice of analyzing the top five largest sales volume CONNUMs in the comparison and U.S. markets – to the extent that data points are available – to determine whether a reasonable link exists between a respondent's

quarterly costs and sales data during the period of review. *See* Remand Redetermination at 12; *see also Pastificio Lucio Garofalo, S.p.A.*, 35 C.I.T. at 635 ("Commerce is afforded considerable discretion in formulating its practices in {calculating cost of production.}"); *Globe Metallurgical, Inc. v. United States*, 28 C.I.T. 1608 (2004) ("A court may measure Commerce's reasonableness by determining whether Commerce's actions are consistent with a past practice or stated policy, or if, in failing to do so, Commerce provides a reasonable explanation."). Although Nucor argues that Commerce's "rote application" of its practice failed to account for the unique facts and arguments on the record, *see* Nucor Remand Br. at 4, Nucor does not demonstrate that Commerce's methodology was unreasonable. *See also AG der Dillinger Huttenwerke v. United States*, 648 F. Supp. 3d 1321 (Ct. Int'l Trade 2023) ("producer failed to show that its proposed alternative methodologies were the only reasonable path forward on the record."). Because "Commerce's methodologies for calculating dumping margins are presumptively correct," *Fla. Citrus Mut.*, 550 F.3d at 1111, in the absence of any demonstration that Commerce's methodology is unreasonable or unlawful, the Court must sustain Commerce's application of its methodology.

To evaluate whether there was evidence of linkage between the cost changes and the sales prices during the period of review, OTS submitted sales and cost information for the five largest sales volume CONNUMs in the comparison and U.S. markets so that Commerce could determine whether there was a reasonable correlation between changing costs and sales prices from quarter to quarter. Draft Calc. Memo at 2. Regarding U.S. sales, OTS's period of review sales consisted of only five CONNUMS that were all made in the third quarter of the period of review. *Id.* Because all of the data came from the same quarter, it could not be compared to other quarters; thus, Commerce could not perform the linkage analysis for the U.S. sales

CONNUMs. *Id.* at 2-3. Therefore, Commerce, in accordance with its standard procedure, compared OTS's average home market sales prices, by quarter, with the reported quarterly costs. *Id.* The comparison revealed that sales and costs for OTS showed a reasonable correlation between the quarterly costs and sales prices for the same period. *Id.* Specifically, for the majority of the time, quarterly costs and quarterly sales prices were moving in the same direction throughout the period of review. *Id.*; *see also* Draft Calc. Memo Attachment III. After reviewing this information and determining that changes in sales prices correlate reasonably to changes in unit cost, Commerce determined that there was linkage between OTS's changing sales prices and costs during the period of review. *See* Draft Calc. Memo.

In challenging Commerce's linkage analysis, Nucor first argues that Commerce should deviate from its standard practice of examining the top five selling CONNUMs in each market to determine whether a reasonable correlation exists between the sales price and the underlying costs. Nucor Remand Br. at 4. According to Nucor, in applying its standard methodology, Commerce failed to address or consider record evidence – namely whether the following assertion undermines Commerce's linkage analysis:

> [
>                                       ] U.S. sales and that [
>         ] five largest-selling home market CONNUMs [
>             ]. {} Consequently, [                    ] five largest-selling
> home market CONNUMs has any real relevance to the margin
> calculation, making Commerce's analysis of the five largest-selling
> home market CONNUMs of limited value.

Nucor Remand Br. at 4. However, in its remand redetermination, Commerce explained that it has a well-established methodology in determining whether a reasonable correlation exists between the sales prices and underlying costs based on the respondent's data. Remand Redetermination at 11. This methodology provides for a "consistent and predictable approach

that can be applied across cases, regardless of other adjustments or changes to the calculations that may affect which CONNUMs" Commerce examines in its margin analysis, which is performed after all information is collected and is constantly changing based on interested party comments, verifications and arguments in the briefs that are received throughout the proceeding. *Id.*

When further elaborating why it declined to depart from its standard practice, Commerce explained that Nucor's alternative approach would require Commerce to conduct the linkage analysis only after running the margin calculation program.  *Id.*  However, the very purpose of Commerce's quarterly cost analysis is to determine whether it is appropriate to use annual average cost data or quarterly cost data for the margin calculation, not after the fact.  *Id.* Conducting the linkage analysis after running the margin program is not reasonable, because the CONNUMs involved in the sales matches between markets could vary based on specific adjustments and calculations, depending on whether Commerce uses annual average cost data or quarterly cost data.  *Id.*

With respect to U.S. sales, Nucor argues that Commerce was unable to conduct a trend analysis given that OTS only made U.S. sales during the third quarter of the period of review. *See* Nucor Remand Br. at 4 ("there is evidence of a correlation between cost and price for {} the five largest-selling home market CONNUMs) and no evidence of a correlation for the {} the five largest-selling U.S. market CONNUMs.").  However, Commerce explained that while it may not have been able to complete a trend analysis for U.S. prices due to the timing of OTS's sales, this limitation was not dispositive in light of the affirmative evidence of linkage between costs and prices in the home market.  Remand Redetermination at 12; *see also Home Meridian Int'l, Inc. v. United States*, 772 F.3d 1289, 1296 (Fed. Cir. 2014) ("The data on which Commerce relies to

value inputs must be the 'best available information,' but there is no requirement that the data be perfect."). Moreover, Nucor is incorrect when it asserts that Commerce found no correlation in the U.S. prices; rather, Commerce concluded that there was no way to determine whether a correlation existed given the limitations of the record data. Remand Redetermination at 12.

Next, Nucor argues that "Commerce provided no explanation as to why the record supports a finding of a correlation between costs and sales price." Nucor Remand Br. at 5. In fact, Commerce cited its standard practice as well as record evidence demonstrating linkage. *See* Remand Redetermination at 10-12; Final Calc. Memo at 2. In accordance with its practice, Commerce analyzed the data points of the top five CONNUMs in the comparison and U.S. markets, to the extent that such data points were available. *Id*. In accordance with that practice, based on the information available, Commerce determined that a reasonable correlation existed between the sales prices and underlying costs during the period of review.

Nucor argues that Commerce's analysis should have focused only on U.S. CONNUMs and home market CONNUMs that matched to U.S. CONNUMs, and that such an analysis would have demonstrated that "[                    ] CONNUMs relevant to the quarterly cost analysis here [                                                    ]." *See* Nucor Remand Br. at 5. However, Commerce explained that Nucor's methodology relied on information only known after running the margin calculation, which, as we explained above, is inappropriate at this stage of Commerce's analysis.

Moreover, Commerce acknowledged that the record data could vary across cases based on the respondent's period of review cost and sales experience and there may not be five CONNUMs sold or produced in each market in every quarter in every case. However, this reality does not detract from the fact that the record evidence demonstrated a reasonable

correlation between the quarterly costs and sales prices for the same period, which is sufficient to support Commerce's analysis and determinations. *See* Final Calc. Memo at 2-3 and Attachment III ("Specifically, {Commerce} found that the quarterly COMs and quarterly sales prices were moving in the same direction for the majority of the POR.").  Ultimately, beyond its disagreement with Commerce's application of its standard methodology, Nucor does not cite any evidence detracting from Commerce's analysis and conclusions in the remand redetermination and fails to show that Commerce's actions were not in accordance with the remand order, were unsupported by substantial evidence, or were otherwise not in accordance with law.

Furthermore, Commerce addressed Nucor's hypothetical alternative comparisons and stated in its BPI memorandum that:

> {E}ven if, arguendo, we considered Nucor's arguments to examine its suggested alternative CONNUMs, we still would find that Nucor's analysis is questionable because Nucor ignores the other [     ] HM CONNUMs that matched to [          ] of U.S. sales. A review of these CONNUMs shows that: (1) [          ] they account for [     ] percent of all sales matches; and (2) [          ] supports a finding of linkage. Specifically, for [                              ], there is linkage for [          ] quarters, and for [                              ], there is linkage for [          ] quarters.

*Id*. In response, Nucor claims that Commerce "misses the point," stating that "the [

]." *See* Nucor Remand Br. at 7-8, n.1.  However, the fact remains that [     ] of the home market CONNUMs in the margin calculations matched to [          ] of U.S. sales. *See* Final Calc. Memo at 2-3 and Attachment III.  Moreover, Nucor continues to disregard Commerce's reasoning for not deviating from its established practices by conducting a linkage analysis after running the margin calculation. *See* Remand Redetermination at 11-12.  As explained above, CONNUMs involved in the sales matches between markets could vary based

on specific adjustments and calculations, depending on whether Commerce uses annual average cost data or quarterly cost data.  *Id.*

 Next, Commerce also correctly explained that Nucor's reliance on *Ferrovanadium from Korea* was misplaced.  Remand Redetermination at 11-12.  Nucor states that *Ferrovanadium from Korea* demonstrated that Commerce "did not blindly follow its normal practice and automatically take into consideration the largest selling home market CONNUMs . . . and instead limited its analysis to the CONNUMs that matched to U.S. sales."  *See* Nucor Remand Br. at 6-7.  However, nowhere in *Ferrovanadium from Korea* did Commerce state that it valued limiting its analysis to the CONNUMs that matched U.S. sales over its consideration of the largest selling home market CONNUMs.  In that case, Commerce continued to follow its established practice of analyzing the largest sales volume CONNUMs in the pool of CONNUMs to conduct both the cost change and linkage analysis.  *See Ferrovanadium from the Republic of Korea*, 82 Fed. Reg. 14,874 (Dep't Commerce Mar. 23, 2017) (final deter. of sales at less than fair value), and accompanying IDM.  A respondent's sales and cost data need only be reasonably correlated for there to be linkage.  *Id.*  ("{W}e believe that requiring too strict a standard for linkage would unreasonably preclude this remedy for products where there is no pricing mechanism in place and it may be very difficult to precisely link production costs to specific sales.").  After reviewing quarterly cost information and determining that changes in sales prices reasonably correlate to changes in unit costs, Commerce determined that there was a reasonable link between OTS's changing sales prices and costs during the period of review.

 In sum, substantial evidence supports Commerce's conclusion that OTS's sales made during the shorter cost-averaging periods could be reasonably linked with the underlying costs during the same shorter cost-averaging periods.  Therefore, in accordance with its established

practice, Commerce reasonably determined that a shorter cost-averaging period approach, based on a quarterly-average costs, is appropriate for OTS, because Commerce found significant cost changes in the cost of manufacturing, as well as a reasonable linkage between OTS's costs and sales prices. Commerce's remand determination was therefore in accordance with the remand order, supported by substantial evidence, and otherwise in accordance with law.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment in favor of the United States.

<div style="margin-left:50%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Augustus Golden

</div>

OF COUNSEL:                                 AUGUSTUS J. GOLDEN
ASHLANDE GELIN                              Trial Attorney
Attorney                                    U.S. Department of Justice
Office of the Chief Counsel                 Civil Division
    for Trade Enforcement and Compliance   Commercial Litigation Branch
U.S. Department of Commerce                 P.O. Box 480
Washington, D.C.                            Ben Franklin Station
                                           Washington, D.C. 20044
                                           Tel: (202) 507-6089
                                           Email: augustus.j.golden@usdoj.gov

~~November 13, 2023~~March 25, 2024                              Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that these comments comply with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which these comments were prepared, the confidential version of these comments contain a total of 4,06~~43~~ words.

<u>/s/ Augustus Golden</u>

~~November 13, 2023~~March 25, 2024

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| OFFICINE TECNOSIDER SRL, )<br><br>*Plaintiff*, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>*Defendant*, )<br><br>and )<br><br>NUCOR CORPORATION, )<br><br>*Defendant-Intervenor*. ) | Court No. 23-00001 |

**ORDER**

Upon consideration of defendant-intervenor's comments in opposition to the remand redetermination, defendant's responsive comments, and all other pertinent papers, it is hereby

ORDERED that the remand determination is sustained; and it is further

ORDERED that judgment shall issue for the United States.

Dated: _____                         _____
         New York, New York                                         JUDGE