NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OFFICINE TECNOSIDER SRL,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES,<br>    Defendant,<br> and<br><br>NUCOR CORPORATION,<br><br>    Defendant-Intervenor. | Before: Hon. Stephen A. Vaden<br><br>Court No. 23-00001<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary Information<br>Removed from Pages: 5, 8, 10 |

### DEFENDANT-INTERVENOR NUCOR CORPORATION'S COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF SECOND REDETERMINATION PURSUANT TO COURT REMAND

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
Jeffrey O. Frank, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: February 14, 2025

# TABLE OF CONTENTS                                     Page

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ...............................................................................................................1

    A. Commerce Failed to Support Its Reliance on Quarterly Costs in Light of the Record as a Whole ...........................................................................................3

III. CONCLUSION ..........................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Coal. of Am. Flange Producers v. United States,*
    448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ................................................................. 2

*CS Wind Vietnam Co. v. United States,*
    832 F.3d 1367 (Fed. Cir. 2016) ....................................................................................... 2

*Jindal Poly Films Ltd. of India v. United States,*
    365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019) ................................................................. 2

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................................................... 2

*Nakornthai Strip Mill Public Co. Ltd. v. United States,*
    32 CIT 1272 (2008) ......................................................................................................... 2

*Officine Tecnosider SRL v. United States,*
    Slip Op. No. 24-102 ............................................................................................... 1, 3, 5

*SKF USA Inc. v. United States,*
    630 F.3d 1365 (Fed. Cir. 2011) ....................................................................................... 1

*Sullivan v. Hudson,*
    490 U.S. 877 (1989) ......................................................................................................... 3

*Ta Chen Stainless Steel Pipe, Inc. v. United States,*
    298 F.3d 1330 (Fed. Cir. 2002) .................................................................................. 1, 2

*U.S. Steel Corp. v. United States,*
    37 CIT 1799, 953 F. Supp. 2d 1332 (2013) ................................................................... 1

**Statutes**

19 U.S.C. § 1677b .................................................................................................................. 9

**Administrative Materials**

*Antidumping Duties; Countervailing Duties,*
    62 Fed. Reg. 27,296 (Dep't Commerce May 19, 1997) ............................................. 9

*Certain Pasta From Italy,*
    78 Fed. Reg. 9,364 (Dep't Commerce Feb. 8, 2013) .................................................. 8

*Certain Welded Carbon Steel Pipe and Tube From Turkey*,
  76 Fed. Reg. 76,939 (Dep't Commerce Dec. 9, 2011) ..............................................................4

*Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*,
  75 Fed. Reg. 34,980 (Dep't Commerce June 21, 2010) ..........................................................4

*Common Alloy Aluminum Sheet From Turkey*,
  88 Fed. Reg. 30,089 (Dep't Commerce May 10, 2023) ..........................................................8

*Common Alloy Aluminum Sheet From Turkey*,
  88 Fed. Reg. 77,550 (Dep't Commerce Nov. 13, 2023) .........................................................8

*Light-Walled Rectangular Pipe and Tube from Mexico*,
  85 Fed. Reg. 21,829 (Dep't Commerce Apr. 20, 2020) ......................................................3, 4

*Welded Line Pipe from the Republic of Korea*,
  84 Fed. Reg. 27,762 (Dep't Commerce June 14, 2019) ..........................................................7

I. **INTRODUCTION**

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we respectfully submit the following comments in opposition to the January 15, 2025 remand results issued by the Department of Commerce ("Commerce"). Final Results of Second Redetermination Pursuant to Ct. Remand Order in *Officine Tecnosider SRL v. United States*, Consol. Ct. No. 23-00001 (Jan. 15, 2025), ECF No. 53 ("Second Remand Results"), Appx83424-83444; Appx3091-3111. In its remand determination, Commerce continued to calculate the cost of production ("COP") for mandatory respondent Officine Tecnosider S.R.L ("OTS") utilizing the quarterly cost methodology. *Id.* For the reasons discussed below, Nucor respectfully requests that this Court find that Commerce's determination is not supported by substantial evidence and is otherwise not in accordance with law and remand the agency's determination for further consideration.

II. **ARGUMENT**

"To be in accordance with law, {an agency} decision must not be arbitrary and capricious . . . and must be supported by substantial evidence and reasoned explanations." *U.S. Steel Corp. v. United States*, 37 CIT 1799, 1801-02, 953 F. Supp. 2d 1332, 1336 (2013) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983); *SKF USA Inc. v. United States*, 630 F.3d 1365, 1373-74 (Fed. Cir. 2011)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). A determination as to whether substantial evidence exists must be based on the record as a whole, taking into consideration both supportive evidence "as well as evidence that 'fairly detracts from

the substantiality of the evidence.'" *Ta Chen*, 298 F.3d at 1335 (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).

To meet the "arbitrary and capricious" standard, Commerce must have "examine{d} the relevant data and articulate{d} a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1377 (Fed. Cir. 2016) (remanding to Commerce because the agency did not provide "the needed explanation setting forth the interpretations and evidence-based factual findings that establish the required connection from statute to determination."). Commerce is further "obligated to respond to those arguments made by interested parties that bear on issues material to Commerce's determination." *Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1351-52 (Ct. Int'l Trade 2020) (citing *Itochu Bldg. Prods., Co. v. United States*, 163 F. Supp. 3d 1330, 1337 (Ct. Int'l Trade 2016)) (finding that Commerce failed to provide an adequate explanation where it "did not address several issues raised by Coalition that were material to the agency's determination{.}"). Accordingly, to provide an adequate explanation for a determination, Commerce must provide more than conclusory statements. *See Jindal Poly Films Ltd. of India v. United States*, 365 F. Supp. 3d 1379, 1384-85 (Ct. Int'l Trade 2019) (finding that Commerce failed to provide a reasoned explanation where its "entire analysis for denying the two post-sale price adjustments is comprised of conclusory statements that the adjustments did not satisfy" certain criteria).

Additionally, "{t}he court reviews remand determinations for compliance with the court's order." *Nakornthai Strip Mill Public Co. Ltd. v. United States*, 32 CIT 1272, 1274, 587 F.Supp.2d 1303, 1306 (2008) (citations omitted). "Deviation from the court's remand order in the subsequent

administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

Here, a review of Commerce's second remand determination in conjunction with the record as a whole and the arguments raised by Nucor demonstrate that the agency's second remand determination is not supported by substantial evidence and is otherwise not in accordance with law, as Commerce has failed to justify its use of the quarterly cost methodology.

### A. Commerce Failed to Support Its Reliance on Quarterly Costs in Light of the Record as a Whole

In remanding Commerce's use of the quarterly cost methodology, this Court required Commerce to explain (1) why home market sales data alone allow Commerce to render a conclusion on whether sales price are reasonably linked to COP, (2) why ignoring U.S. market data is or is not a departure from past practice, and (3) why the quarterly cost methodology can be trusted to produce reliable results given the facts of this case. Appx023-024. As explained below, Commerce has failed to adequately address the Court's questions, and its determination to continue to use the quarterly cost methodology is not supported by substantial evidence.

First, Commerce has failed to explain why home market sales data alone allow Commerce to render a conclusion on whether sales prices are reasonably linked to COP. Under its normal methodology, Commerce will calculate an annual weighted-average cost covering the 12 months of the period of review ("POR"). *See* Appx83402-83403; Appx3067-3068; Issues and Decision Memorandum accompanying *Light-Walled Rectangular Pipe and Tube from Mexico*, 85 Fed. Reg. 21,829 (Dep't Commerce Apr. 20, 2020) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2017-2018) at 7. Commerce will deviate from the normal methodology only if a respondent's data meet two conditions. First, the data demonstrate that a respondent experienced a significant change in the cost of manufacturing ("COM") during the POR. *See*

3

Appx83437; Appx3104.[1] Second, "the record evidence indicates that sales made during the shorter cost-averaging periods {can} be reasonably linked with {the} costs during the same shorter cost-averaging periods." *Id*.

To determine whether changes in sales prices and COM are "reasonably linked," Commerce examines the record for evidence that "changes in selling prices reasonably correlate to changes in unit costs." Issues and Decision Memorandum accompanying *Certain Welded Carbon Steel Pipe and Tube From Turkey*, 76 Fed. Reg. 76,939 (Dep't Commerce Dec. 9, 2011) (notice of final results of antidumping duty admin. rev.) at 4 ("CWP Turkey Final Results"). This correlation analysis compares, on a quarterly basis, the trends of a respondent's costs against the trends of a respondent's home market and U.S. market sale prices. *Id*.; Issues and Decision Memorandum accompanying *Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*, 75 Fed. Reg. 34,980 (Dep't Commerce June 21, 2010) (final results of the antidumping duty admin. rev.) at 12 ("CWP Korea Final Results"). Only where both conditions are met does Commerce apply the alternative quarterly cost methodology. Commerce typically evaluates whether the data satisfy the "significant change" and "reasonably linked" conditions by examining the five largest selling control numbers ("CONNUMs") in the home market and the five largest selling CONNUMs in the United States. *Id*. ("To facilitate our analysis, we asked {the respondent} to provide a comparison, by quarter, of the weighted average sales prices for the five most frequently sold CONNUMs in the home market and the five most frequently sold CONNUMs in the U.S. market to the quarterly COM.").

---

[1] Commerce's determination with respect to the first prong of this test is not contested here.

Here, however, Commerce did not conduct its normal analysis of comparing five CONNUMs from the U.S. market and five CONNUMs from the home market to determine whether sales prices were "reasonably linked" with the COM. Commerce stated that because OTS made all its U.S. sales in the same quarter, it instead analyzed the ten most frequently sold CONNUMs in the home market, but none from the U.S. market. Appx83407-Appx83409. According to Commerce, because the analysis of the top ten home market CONNUMs shows a correlation between changes in the sales price and COM in [       ] quarters, there was "sufficient insight" into OTS's pricing practices to conclude that use of the quarterly cost methodology was warranted. Appx83407-Appx83408; Appx3072-3073.

This explanation and analysis fails to address the concerns the Court highlighted, and thus fails to demonstrate the propriety of using the quarterly cost methodology. The Court instructed Commerce to explain "why it believes home market sales data alone allows it to render a conclusion about whether sales prices are reasonably linked to the cost of production" and "why whatever test it applies can be trusted to produce reliable results." Appx023-Appx024. Commerce did not do so in the Second Remand Results. While Commerce notes that it does not "place more weight on the pricing practice in one market over the other," this is not the issue at hand. Appx83430; Appx3097. Commerce's normal analysis examines sales in both the U.S. and comparison markets and, here, it is unable to conduct *any* analysis with regard to U.S. sales. Commerce attempts to justify this, stating that it disagreed that it was unable to conduct any analysis of OTS's U.S. sales and claiming that it did "examine and analyze OTS'{s} U.S. sales {,} but found that the data *did not and could not* indicate whether linkage existed between OTS'{s} costs and sales prices during the POR." Appx83438; Appx3105 (emphasis added). This statement underscores the error in Commerce's determination.

As Commerce recognizes, there is no data indicating a linkage between cost and U.S. sales prices, and the agency has not explained how its analysis of home market sales alone is sufficient to overcome this lack of data. In other words, Commerce has not addressed why evidence of a linkage in the home market *only* supports a finding that there is a linkage between costs and *all* sales (*i.e.*, home market and U.S.) or why trends in the home market are necessarily sufficient to impute trends in the U.S. market or otherwise render such trends unnecessary or irrelevant. This is not a case of Commerce simply placing more weight on the home market over the U.S. market—Commerce's analysis disregards the relevance of the U.S. market completely. As Commerce has failed to address this absence of information—and the relevance of its test in light of this absence—Commerce has not complied with the Court's remand order and the record data in this case does not justify analyzing quarterly costs using Commerce's usual method.

The necessity of analyzing the record for evidence of a cost-price link in both markets before relying on the quarterly cost methodology is evident from both Commerce's practice and the dumping calculation itself. As Commerce states, in order to determine whether there is a correlation between sales prices and COM, it typically examines the five largest selling CONNUMs in each market. Appx83429; Appx3096. Commerce cites to a pair of prior proceedings in which it departed from its practice of examining the five largest CONNUMs in each market for the proposition that Commerce has a practice of expanding the number of CONNUMS examined in one market where the data does not permit the agency to perform a fulsome analysis using the top five CONNUMs in each market. *See* Appx83431-Appx83433; Appx3098-Appx3100. However, each of these cases is distinguishable. In *Circular Welded Pipe from Türkiye*, Commerce examined and considered the relationship between sales and costs in the U.S. market, but found that the data were "inconclusive" because it did not have at least three quarters of comparisons for

any of the relevant CONNUMs. CWP Turkey Final Results at 22 n.14.[2] However, in that case, Commerce still took into consideration the information regarding U.S. sales, whereas here, Commerce has completely disregarded the relevance of OTS's U.S. sales data to its linkage analysis. In *Welded Line Pipe from Korea*, while Commerce used the ten most frequent CONNUMs from the U.S. market, it did so because the respondent had no viable home or third country during the period of review. Issues and Decision Memorandum accompanying *Welded Line Pipe from the Republic of Korea*, 84 Fed. Reg. 27,762 (Dep't Commerce June 14, 2019) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2016-17) at 56 ("WLP Korea Final Results"). As no home market or third country sales prices were used in the dumping calculation, the relevance of any cost-price linkage in the home/third country market to the dumping calculation was minimized. In this case, in contrast, there *are* U.S. sales and these sales are part of the dumping calculation, but Commerce has chosen to disregard whether there is any evidence of a cost-price linkage because it could not apply its normal test for determining whether sales and COP are "reasonably linked." Furthermore, in *Welded Line Pipe from Korea*, Commerce determined not to use the quarterly cost methodology because "the magnitude of the changes in the quarterly costs and sales prices . . . were not comparable and the quarterly prices and costs did not trend consistently for *all* the CONNUMs tested. *Id.* (emphasis added). This further indicates that in cases in which there are no sales in one market to analyze, Commerce does not ignore the factual intricacies of the case and rotely apply its normal quarterly cost analysis. Because these cases are not analogous to this case, Commerce's claim that it is not deviating from its past practice

---

[2]     Commerce claims that *Circular Welded Pipe from Türkiye* is "directly analogous" to the case at hand. Appx83440; Appx3107. Even if this were true, as discussed below, Commerce's use of only home market sales in its quarterly cost analysis in that case was not in accordance with law.

is incorrect, and Commerce has failed to provide an explanation for its departure from past practice here.

Furthermore, just as the calculation of margins in antidumping proceedings requires a comparison of sales prices in the U.S. market and the home market, the determination of trends in U.S. market and home markets sales to the COM requires an analysis of both markets. That is, while sales prices in Italy may have trended in the same direction as the COM, Commerce cannot use that information to extrapolate that sales prices in the United States trended correspondingly. Indeed, Commerce practice indicates that it does not find that a linkage between sales prices and COP exists because such a correlation exists in one market; to the contrary, the agency makes such a finding where a majority of comparisons support this conclusion, examining data in both the U.S. and home market. *See* CWP Turkey Final Results at 22 n.15 ("To find linkage, we require that more than half of the most frequently sold CONNUMs analyzed show reasonable correlation."). The fact that sales in one market tended to trend in the same direction as COM, does not mean that sales in another market will follow this trend. *See, e.g.*, Issues and Decision Memorandum accompanying *Certain Pasta From Italy*, 78 Fed. Reg. 9,364 (Dep't Commerce Feb. 8, 2013) (notice of final results of 15th antidumping admin. rev., final no shipment deter. and revocation of order, in part; 2010-2011) at cmt. 3 ("Certain Pasta Final Results") ("{F}or the home market CONNUMs we found that all five were reasonably correlated while we found that none of the five U.S. market CONNUMs were reasonably correlated.").[3]

---

[3] While in *Certain Pasta from Italy*, Commerce used its quarterly cost methodology because there was a 50/50 split in the linkage analysis, Certain Pasta Final Results at cmt. 3, here, [          ]. Appx83433; Appx3100. Furthermore, as noted above, in other cases Commerce has required that "more than half" of the most frequently sold CONNUMS show reasonable correlation in order to apply the quarterly cost methodology. *See e.g.*, CWP Turkey Final Results at 22 n.15; *accord* Issues and Decision Memorandum accompanying *Common Alloy Aluminum Sheet From Turkey*, 88 Fed. Reg. 30,089 (Dep't Commerce May 10, 2023) (prelim. results of antidumping duty admin. rev.; 2020-2022) at 15 ("To determine that the quarterly cost methodology is warranted, Commerce will normally require that a majority of the top five U.S. and top five home

The necessity of considering both U.S. and home market sales trends to the COM in order to apply the quarterly cost methodology comports with the overarching purpose of the antidumping duty laws. The antidumping statute is designed to provide a fair comparison between U.S. sales prices and prices in the home or comparison market for Commerce to reach an accurate dumping margin. *See, e.g.*, 19 U.S.C. § 1677b (requiring a "fair comparison" between export prices and normal value); *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,350 (Dep't Commerce May 19, 1997) (finding it unnecessary to include in the agency's regulations a statement that all aspects of its antidumping methodology be based on a fair comparison because the antidumping statute was clear that it should). Here, Commerce has concluded that there is sufficient evidence of a linkage between cost and sales prices to justify a departure from its normal methodology despite finding that there is no evidence of linkage between cost and U.S. sales prices. Ignoring the absence of evidence regarding U.S. market sales in determining whether to use the quarterly cost methodology thus runs counter to the framework underlying the antidumping laws, and Commerce's determination to use the quarterly cost methodology here is unsupported by substantial evidence and contrary to law.

Finally, Commerce has failed to explain how its use of the quarterly cost methodology can be trusted to produce reliable results given the facts of this case. Commerce's remand determination is focused on explaining how its analysis of the top ten home market CONNUMs showed that prices trended in the same direction as COM in the *home market*, but nowhere does it explain how this analysis can be trusted to reliably determine U.S. sales trends or produce reliable

---

market CONNUMs experience cost changes between quarters of the POR above 37.5 percent. In this case, changes above the 37.5 percent threshold occurred with only five of the ten CONNUMs. Thus, we relied on the POR-wide COP data . . .") (unchanged in Issues and Decision Memorandum accompanying *Common Alloy Aluminum Sheet From Turkey*, 88 Fed. Reg. 77,550 (Dep't Commerce Nov. 13, 2023) (final results of antidumping duty admin. rev.; 2020-2022)).

dumping margins. *See* Appx83424-Appx83444; Appx3091-Appx3111. Dumping is defined by a company acting differently in the U.S. market than in the home (or third country) market. Thus, there is an inherent risk that only analyzing sales price trends in and modifying the dumping methodology based on only one market would lead to dumping margins that do not accurately reflect commercial reality. This is particularly true where, as here, OTS's total home market sales are [                    ] than its total U.S. market sales. *See* Appx80033; Appx01033. This discrepancy in the quantity of sales in the home and U.S. markets highlights how OTS behaves differently in the different markets, meaning that trends in one market may not be reflective of trends in another.

      In sum, Commerce has once again failed to provide an explanation as to how its test for using the quarterly cost methodology is appropriate here, particularly in light of the fact that it has ignored the U.S. sales data. The agency failed to explain why an analysis of home market sales data *alone* shows that sales prices are reasonably linked to COP, failed to explain how its use of the quarterly cost methodology comports with past practice, and failed to provide an explanation as to how its analysis of OTS's home market sales can be trusted to yield accurate results in this case.

## III. CONCLUSION

For the reasons contained herein, Nucor respectfully requests that the Court remand Commerce's second remand determination for further consideration or explanation, as it is not supported by substantial evidence and is not otherwise in accordance with law.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
Jeffrey O. Frank, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: February 14, 2025

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that these Comments comply with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Comments In Opposition To the Final Results of Second Redetermination Pursuant to Court Remand , as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 3,269 words.

*/s/ Alan H. Price*
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

February 14, 2025
(Date)

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **OFFICINE TECNOSIDER SRL,**<br><br>                  Plaintiff,<br><br>         v.<br><br>**UNITED STATES,**<br>                Defendant,<br>       and<br><br>**NUCOR CORPORATION,**<br><br>                Defendant-Intervenor. | Before: Hon. Stephen A. Vaden<br><br>Court No. 23-00001 |

## ORDER

Upon consideration of Defendant-Intervenor Nucor Corporation's Comments in Opposition to the Final Results of Second Redetermination Pursuant to Court Remand, and all responses thereto, it is hereby:

**ORDERED** that the U.S. Department of Commerce's Final Results of Second Redetermination Pursuant to Court Remand, ECF No. 53-1, is remanded for further reconsideration or explanation in accordance with the judgment of the Court.

**IT IS SO ORDERED.**

                                                                                  Judge Stephen Alexander Vaden

Dated:_____, 2025
      New York, New York