NON-CONFIDENTIAL VERSION

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OFFICINE TECNOSIDER SRL,<br><br>               Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>               Defendant,<br><br>     and<br><br>NUCOR CORPORATION,<br><br>               Defendant-Intervenor. | Before: Hon. Stephen A. Vaden,<br>       Judge<br><br>Court No. 23-00001<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary Information<br>Removed From Pages: 5-6 |

## DEFENDANT-INTERVENOR NUCOR CORPORATION'S REPLY COMMENTS

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
Jeffrey O. Frank, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: April 18, 2025

Ct. No. 23-00001                                     NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT ...........................................................................................................1

  A.    Commerce Has No Established Practice for Departing from Its
        Standard Practice of Analyzing Sales-Cost Linkage ................................2

  B.    Commerce Did Not Adequately Explain Why Analyzing Only
        Home Market Sales Allows It To Determine That Changes in Sales
        Prices Are Linked to COM ........................................................................4

  C.    Commerce Has Not Explained Why Its Quarterly Cost Methodology
        Can Be Trusted to Produce Reliable Results .............................................6

III.  CONCLUSION ........................................................................................................8

Ct. No. 23-00001                                                    NON-CONFIDENTIAL VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Statutes**

19 U.S.C. § 1677b(a) ................................................................................................6

**Administrative Materials**

*Certain Welded Carbon Steel Pipe and Tube From Turkey*,
    76 Fed. Reg. 76,939 (Dep't Commerce Dec. 9, 2011) ....................................2, 3, 5

*Ferrovanadium from the Republic of Korea*,
    82 Fed. Reg. 14,874 (Dep't Commerce Mar. 23, 2017) ......................................2, 3

*Welded Line Pipe from the Republic of Korea*,
    84 Fed. Reg. 27,762 (Dep't Commerce June 14, 2019) ......................................3, 5

## I.    **INTRODUCTION**

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we respectfully submit the following reply to the response comments of Defendant United States and Plaintiff Officine Tecnosider S.R.L. ("OTS"). *See* Confid. Def.'s Resp. to Comments on the Second Remand Determination (Mar. 17, 2025), ECF No. 61 ("Def. Resp"); Pl.'s Resp. to Comments on the Second Remand Determination (Apr. 4, 2025), ECF No. 63 ("Pl. Resp."). As detailed below, and in conjunction with Nucor's comments in opposition to the Second Remand Determination, the U.S. Department of Commerce's ("Commerce") determination to calculate the cost of production ("COP") for OTS utilizing the quarterly cost methodology is not supported by substantial evidence and otherwise in accordance with law. *See generally* Confid. Def.-Int. Nucor Corp.'s Cmts. in Opp'n to the Final Results of Second Redetermination Pursuant to Ct. Remand (Feb. 14, 2025), ECF No. 60 ("Nucor Opp'n Cmts."); *see also* Final Results of Second Redetermination Pursuant to Ct. Remand Order in *Officine Tecnosider SRL v. United States*, Consol. Ct. No. 23-00001 (Jan. 15, 2025), ECF No. 53 ("Second Remand Results"), Appx83424-83444; Appx3091-3111. Accordingly, Nucor respectfully requests that the Court again remand this issue to Commerce for reconsideration.

## II.    **ARGUMENT**

As explained in Nucor's comments in opposition to the Second Remand Results, Commerce has failed to support its reliance on quarterly costs, as the agency has not explained why home market data alone is sufficient to support its conclusion or demonstrated that the use of quarterly costs here can be trusted to produce reliable results. Nucor Opp'n Cmts. at 1-10. In response, Defendant and OTS assert that Commerce's Second Remand Results are supported by substantial evidence. First, they argue that Commerce has not departed from its past practice. *See*

Def. Resp. at 9-12, 14-16; Pl. Resp. at 3-6.  Second, they argue that Commerce explained why analyzing only home market sales allowed it to determine that sales prices are reasonably linked to the cost of manufacturing ("COM").  *See* Def. Resp. at 12-14; Pl. Resp. at 6-7. Finally, they argue that Commerce adequately explained why its quarterly cost methodology can be trusted to produce reliable results here.  *See* Def. Resp. at 16-17; Pl. Resp. at 7-9. As discussed below, each of these arguments is unavailing, and the Court should again remand this case to Commerce to redetermine whether the agency's use of its quarterly cost methodology is appropriate here.

A.      **Commerce Has No Established Practice When Departing from Its Standard Practice of Analyzing Sales-Cost Linkage**

Both Defendant and OTS argue that Commerce has not departed from its past practice by relying only on home market data to determine that sales prices are linked with COM. Def. Resp. at 9-12, 14-16; Pl. Resp. at 3-6. In doing so, however, Defendant and OTS rely on factually distinct cases that do not support their position.

Commerce's standard practice in determining whether to use its quarterly cost methodology is to analyze the quarterly sales and COM information for the five largest control numbers ("CONNUMs") by sales volume in both the U.S. and comparison markets to determine whether significant cost changes influenced pricing decisions. *See, e.g.*, Appx83429. Commerce has, on limited occasions, departed from this standard practice. *See, e.g.*, Issues and Decision Memorandum accompanying *Ferrovanadium from the Republic of Korea*, 82 Fed. Reg. 14,874 (Dep't Commerce Mar. 23, 2017) (final deter. of sales at less than fair value) at 24 n.109 and 25 ("Ferrovanadium from Korea Final Results"); Issues and Decision Memorandum accompanying *Certain Welded Carbon Steel Pipe and Tube From Turkey*, 76 Fed. Reg. 76,939 (Dep't Commerce Dec. 9, 2011) (notice of final results of antidumping duty admin. rev.) at cmt. 8 ("CWP Turkey Final Results"); *Welded Line Pipe from the Republic of Korea*, 84 Fed. Reg. 27,762 (Dep't

Commerce June 14, 2019) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2016-17) at 56 ("WLP Korea Final Results"). Defendant infers that Commerce's past cases establish an agency practice of expanding its linkage analysis from five to ten CONNUMs in a single market when it is unable to analyze sales price trends in one market.[1] Def. Resp. at 10-11. However, Commerce's cases merely establish that Commerce performs its quarterly cost analysis on a case-by-case basis when it departs from its standard practice. Further, as none of these cases address the same factual circumstances present here, none support Commerce's approach in light of the facts of this case.

In the cases in which it has departed from its standard practice, Commerce has not conducted its linking analysis in a consistent manner. In *Ferrovanadium from Korea*, Commerce conducted its analysis on the basis of a single CONNUM when "only one CONNUM" was sold in the U.S. market. Ferrovanadium from Korea Final Results at 24 n.109 and 25. In *CWP from Turkey*, Commerce analyzed sales in both the U.S. and home markets but, because it found the U.S. data "inconclusive," the agency examined ten CONNUMs from the home market. CWP Turkey Final Results at cmt. 8. In *WLP from Korea*, Commerce conducted its analysis using ten CONNUMs from the U.S. market because there were no home market or third country sales. WLP Korea Final Results at 56. Thus, contrary to Defendant's claim, Commerce has no established

---

[1]      Defendant appears to acknowledge that this approach was not followed in *Ferrovanadium from Korea*, but attempts to dismiss this case, asserting that Commerce did not explain why it departed from its standard practice. Def. Resp. at 10 n.4. However, in that case, Commerce stated that "during the POI, Korvan only produced three CONNUMs and sold only one of those CONNUM in the U.S. market. Further, the CONNUM sold in the U.S. market was also the highest-sales volume CONNUM sold in the home market. Thus, consistent with the Preliminary Determination, the significant cost change analysis was based on only one CONNUM." Ferrovanadium from Korea Final Results at 24 n.109. Thus, Commerce recognized that the specific fact of that case rendered a case-specific test to determine if quarterly costs were appropriate.

practice of how to conduct an analysis of the linkage between sales prices and costs in situations where it is unable to analyze sales price trends in either the U.S. or comparison markets. Further, none of the cases highlighted by Defendant demonstrate that Commerce has a practice of relying on quarterly costs when no analysis of U.S. sales can be undertaken.

### B. Commerce Did Not Adequately Explain Why Analyzing Only Home Market Sales Allows It To Determine That Changes in Sales Prices Are Linked to COM

As discussed in the prior section, Commerce has no established practice with respect to conducting an analysis of the linkage between sales prices and costs when it departs from its standard practice, nor does it have a practice of ignoring U.S. market data. Instead, if and when Commerce departs from its standard practice, it must explain and support its approach in light of the specific facts of the case. Commerce has failed to do so here, as it has not adequately explained how its reliance on an analysis of only home market sales allows it to render a conclusion about whether sales prices are linked to COP. *See* Appx023-024.

Defendant asserts that Commerce's statement that OTS's U.S. sales data were "inconclusive" is an adequate explanation for relying only on home market sales in its price-cost analysis. Def. Resp. at 12. As an initial matter, as Defendant recognizes, Commerce did not undertake any analysis of OTS's U.S. sales because "Commerce plainly cannot evaluate quarterly sales data that does not exist." *Id.* Thus, it is not that the linkage data for U.S. sales were "inconclusive," which suggests that there was an analysis that did not reveal clear trends; instead, linkage data for U.S. sales was non-existent. *See* Appx83438; Appx3105 (explaining that the U.S. sales data "did not and could not indicate whether linkage existed between OTS' costs and sales prices during the POR"). Defendant states that Commerce sufficiently addressed this absence of information, but Commerce only acknowledged that an analysis of U.S. sales data could not be

undertaken. This mechanical dismissal of the U.S. sales data—and the lack thereof—does not explain how its reliance on only home market sales in its analysis allows it to render a conclusion that sales prices and COP are linked. Thus, Commerce still has not explained "why it believes home market sales data alone allows it to render a conclusion about whether sales prices are reasonably linked to the cost of production." Appx023-024. This is particularly true where, as here, Commerce is not following any sort of established practice, despite resting its determination to analyze only home market sales on past practice. *See* Def. Br. at 14-16.

Commerce's shortcoming here are highlighted by the analyses undertaken in other cases where the agency has departed from its normal practice. In particular, in those cases, Commerce has further analyzed the data beyond whether sales prices and COM merely trend in the same direction more than half the time. In *WLP from Korea*, Commerce determined *not* to use the quarterly cost methodology because "the *magnitude of the changes* in the quarterly costs and sales prices . . . were not comparable and the quarterly prices *and* costs did not trend consistently for *all* the CONNUMs tested." WLP Korea Final Results at 56 (emphasis added). Likewise, in *CWP from Turkey*, Commerce only used its quarterly cost methodology after finding that "the magnitude of the changes in the quarterly costs and sales prices were comparable, that the prices and costs moved in the same direction for the majority of quarters, and that the slope lines for the quarterly costs and sales prices trended consistently." CWP Turkey Final Results at cmt. 8. These more in-depth analyses indicate that in cases in which the agency cannot conduct its standard test, Commerce does not ignore the factual intricacies of the case and rotely apply its normal quarterly cost analysis to an expanded data set. The record here establishes that there is sales prices and COM [      ] correlate for all analyzed quarters. Appx83433; Appx3100  Nor did Commerce anywhere attempt to analyze whether "the magnitude of the changes in the quarterly costs and sales prices" were

comparable or take any further analysis of the data to determine the appropriateness of applying

the quarterly cost methodology here. WLP Korea Final Results at 56.

### C.    Commerce Has Not Explained Why Its Quarterly Cost Methodology Can Be Trusted to Produce Reliable Results

Finally, Commerce failed to explain why its quarterly cost methodology can be trusted to

produce reliable results.  The Defendant argues that Commerce has adequately demonstrated that

the results are accurate by expanding its analysis of CONNUMs in the home market from five to

ten.  Def. Resp. at 16. But merely increasing the number of CONNUMs analyzed in one market

without explanation ignores Nucor's central claim—that Commerce must explain how the home

market sales can be trusted to reliably determine U.S. sales trends or produce reliable dumping

margins. *See* Nucor Opp'n Cmts. at 9-10; Appx83418-83419; Appx3085-3086.

As Nucor previously argued, the entire system of calculating antidumping duty margins is

built on a comparison between the U.S. *and* the comparison markets. *See* Nucor Opp'n Cmts. at

10; *see also* 19 U.S.C. § 1677b(a) ("In determining . . . whether subject merchandise is being . . .

sold at less than fair value, a fair comparison shall be made between the export price . . . and normal

value."). Ignoring the U.S. market for purposes of analyzing whether there is linkage between sales

prices and COM introduces a significant risk that the dumping calculation will not result in a fair

comparison between the prices in the U.S. and home markets and that the resulting margin will

not be accurate. The record indicates that [



] in the U.S. market.  *See* Appx83414; Appx3079;

Appx80033; Appx01033. Commerce's analysis ignores these differences and assumes that the

effect of COM on sales prices in the home market would have the same effect in the U.S. market.

While Commerce made much of the fact that the analyzed CONNUMs account for a large

percentage of all home market sales, nowhere did they explain why this could be trusted to reliably determine U.S. sales trends. *See* Appx83433, Appx83442-83443; Appx3100, Appx3109-3110. Defendant states that Nucor "speculates that OTS's sales behavior might have been different in the U.S. market." Def. Resp. at 16. But Commerce has engaged in the same speculation—they have assumed that OTS's sales behavior in the U.S. is the same, despite record evidence showing that its sales behavior is different. *See* Appx83414; Appx3079; Appx80033; Appx01033.

In short, Commerce states why it could not follow its standard test, but does not explain why simply relying on more home market CONNUMs resolves the shortcomings in the data. As a result, Commerce has failed to demonstrate "why whatever test it applies can be trusted to produce reliable results." Appx024. Accordingly, the Court should not sustain the Second Remand Results.

## III.   <u>CONCLUSION</u>

For the reasons contained herein, Nucor respectfully requests that the Court remand Commerce's Second Remand Results for reconsideration or further explanation, as it is not supported by substantial evidence and is not otherwise in accordance with law.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
Jeffrey O. Frank, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: April 18, 2025

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that these Comments comply with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Reply Comments, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2,225 words.

<u>*/s/ Alan H. Price*</u>
(Signature of Attorney)

<u>Alan H. Price</u>
(Name of Attorney)

<u>Nucor Corporation</u>
(Representative Of)

<u>April 18, 2025</u>
(Date)